JAMES A. PIERCE v. STATE OF INDIANA.

[No. 1076S341. Filed November 28, 1977.]

*John S. Capper, IV*, of Crawfordsville, *James R. Earnshaw*, of Crawfordsville, for appellant.

*Theodore L. Sendak*, Attorney General, *Kenneth R. Stamm*, Deputy Attorney General, for appellee.

PIVARNIK, J.—Appellant Pierce was convicted on March 11, 1976, by a jury in the Montgomery Circuit Court of the crime of commission of a felony while armed. He was sentenced to imprisonment for ten to thirty years.

On May 2, 1975, Mrs. Mary Beth Harmon and her children went to a shopping mall in Montgomery County. After finishing shopping she returned to her car and found that it would not start. She observed appellant in another car watching her. She went back to the mall and called her husband at

work, who told her to leave the car and walk home. When she started to lock the car pursuant to her husband's suggestion, appellant came up and asked her if she was having trouble. He then began working under the hood and asked her to try to start the car. After several attempts failed, he told her he would try the coil and thereupon the car started. Appellant then told Mrs. Harmon that his car would not run and asked for a ride to a different location to buy automobile parts. She stated that although she was somewhat frightened, she agreed to take him there. She drove the car and appellant sat on the passenger's side while the children sat in the back seat. As she pulled out, appellant pulled a gun from his trousers and said, "Keep driving lady, or I'll kill the kids." She proceeded down the road for a short distance and then stopped the car, stepped out, and yelled for help to a passing truck. Appellant jumped from the car and ran.

Appellant presents five issues for review in this appeal: (1) failure to give him an arraignment; (2) admission of evidence obtained following an illegal arrest; (3) admission of identification testimony based upon an allegedly suggestive line-up; (4) admission of testimony of similar acts, and; (5) giving an instruction which allegedly misled the jury about possible verdicts.

## I.

The first error alleged by appellant is that the trial court failed to give him an arraignment. After appellant's arrest, the court appointed two attorneys to represent and defend him. His appointed counsel filed a motion questioning appellant's competency to stand trial, and the court appointed a psychiatrist to examine appellant and to make a report to the court. A competency hearing was held, and the court after hearing all of the evidence found that appellant was competent to stand trial. By agreement of the parties, arraignment was held on September 11, 1975. Appellant refused to make any plea and stood mute on the given day,

and the court accordingly entered pleas of not guilty on all charges.

The only question raised as to this arraignment is that the court did not give appellant either an advisement of rights or a reading of the charging affidavits or informations. Statutory law governing the procedure, Ind. Code § 35-4.1-1-1 (Burns 1975), provides:

"(a) Before any person is tried for the commission of an offense he shall be called into open court, informed of the charge against him, and called upon to plead thereto. If the defendant so requests, the indictment or information shall be read to him before he is required to plead. A plea shall be entered unless the court grants further time.

. . . .

"(d) If the defendant stand mute or refuse to plead to the indictment or information . . . a plea of not guilty shall be entered by the court. A judgment of conviction shall not be invalidated because of the failure of the record to show that the indictment or information was read to the defendant at arraignment or that the defendant entered a plea, unless the record shows that the defendant objected to entering upon the trial for lack of such arraignment."

The record shows that the above procedure was complied with. Appellant made no request to have the information read to him at the arraignment, nor did he at any time before trial object to the procedures in and during the arraignment. No objection was raised concerning the procedure followed in the arraignment until appellant's motion to correct errors was filed following his trial and conviction. Furthermore, the record shows that appellant was represented at all times by two competent attorneys, that he was in fact given a trial by jury, and that no irregularities occurred that would prejudice his rights by a lack of knowledge on his part. Appellant's first contention is thus without merit.

II.

Appellant next argues that he was illegally arrested and that evidence obtained therefrom was improperly admitted at trial. Appellant was arrested by Officer Swenke on May

29, 1975, on a warrant issued by the Crawfordsville city court on September 27, 1969, for failure to appear in traffic court on that date. Office Swenke recognized that both the description of the person and the automobile involved in the traffic court case matched the description of the assailant and the automobile he drove in the present case, as given him by Mrs. Harmon. The officer was also aware that appellant had been convicted of a similar offense in the past. He became aware that an outstanding warrant was in the files that had not been served to that date. It is this warrant he took to appellant's home and made the arrest described above. Appellant was identified from a line-up by Mrs. Harmon on the night of this arrest. The charging affidavits in the present case were filed in the Montgomery Circuit Court on June 3, 1975, together with affidavits of probable cause signed by Louis S. Swenke of the Crawfordsville city police and Mary Beth Harmon, the alleged victim. On that same day the trial court issued a warrant for the appellant's arrest, and this warrant was served upon him on June 5, 1975.

The only question raised with reference to the allegedly illegal arrest is that evidence was obtained from it which taints such evidence and renders it inadmissible at trial. Such evidence, it is claimed, was the line-up at the police station on that night, May 29, at which Mrs. Harmon identified appellant. Officer Swenke testified at the suppression hearing that when he arrived at the police station with appellant, he immediately gave him the *Miranda* rights and warnings, and testified in detail as to what they consisted of. These warnings were admitted into evidence along with a waiver form which the defendant signed. Officer Swenke testified that appellant signed the waiver form, but he told the police that he was not going to make a statement and would tell them nothing about anything. They, therefore, asked him nothing further and no statements or confessions of appellant were admitted into evidence. Officer Swenke further testified that he asked appel-

lant if he would appear in a line-up, and appellant replied he was willing to stand in a line-up but that he did not want to stand up there by himself: "If you get other people I will stand up there with them." There was some conflict in this evidence in that appellant testified at the suppression hearing that Officer Swenke advised him he was not waiving his rights, but was only acknowledging that these rights were given to him. He further testified that he told Officer Swenke he wanted an attorney before he appeared in a line-up. We need not resolve this conflict since the determination of the facts was within the jurisdiction of the trial court. The question of alleged illegality of the city court warrant is of no significance to settle this issue, since the officer had a right to arrest and detain appellant for investigatory reasons on suspicion that he had committed a felony. No evidence was obtained, offered, or admitted at trial as a result of this arrest. There is thus no error presented on this claim.

## III.

The appellant next urges that the trial court should have excluded the in-court identification testimony of Mrs. Harmon, since it was based upon an allegedly suggestive lineup. Mrs. Harmon's report to the police was that the person who assailed her on May 2 had short red hair. There were five persons in the line-up in addition to appellant Pierce, and none of them had red hair. Two of them had sandy light colored hair, one was bald, and one had long dark hair. The last had a moustache, and on the day in question Mrs. Harmon said the assailant was clean shaven. Officer Swenke said that he attempted to get people who were of the same age and generally of the same physical build and characteristics as the suspect. Furthermore, when Officer Swenke called Mrs. Harmon to come to the police station on May 29, he made a statement to the effect that, "I think we may have either a suspect or the man dealing with your episode. . . ." Neither the officer nor Mrs. Harmon were sure exactly what the wording was. Mrs. Harmon looked at the line-up and im-

mediately picked out appellant, stating to Officer Swenke that she was positive that he was the man.

In open court during the trial, Mrs. Harmon again stated that she was positive that Pierce was the man. It is significant that at the trial, Mrs. Harmon stated she was not sure at that time what color of hair the other participants in the line-up had or any of their general features. She stated that when she looked at appellant, she immediately recognized him as the person who committed the act on May 2. She stated that she was sure he was the man regardless of the features or characteristics of any of the other persons in the line-up.

Whether or not an in-court identification of a defendant is tainted by an allegedly suggestive line-up depends on all the facts and circumstances of the particular case. This issue has been discussed at length by this court in several cases. *See, e.g., Love* v. *State,* (1977) 266 Ind. 577, 365 N.E.2d 771. The basic concern is that a line-up be conducted in a fair manner so that we can determine that we have the honest opinion of the witness rather than one suggested to her by manipulation of the line-up. This is accomplished by having the victim or witness attempt to identify the defendant from a group of people rather than pointing the person out alone. It follows that the group should be so selected and constituted that one who is a suspected person does not stand out so strikingly in his characteristics that he virtually is alone with respect to identifying features. Neither does it follow, however, that the police would be required to perform the improbable if not impossible task of finding four or five other people who are virtual twins to the defendant. Officer Swenke testified at the suppression hearing that he attempted to find five people in addition to appellant who were of the same general physical characteristics, with reference to age and physical build, and that he thought some diversity such as hair style, facial hair, and so forth would present an atmosphere to the witness that would be proper. He stated that in thirty

days time, which was the time from the incident to the line-up, a person could grow a moustache or shave one off or have on a wig and take it off.

The statement of Officer Swenke to Mrs. Harmon on the phone to the effect that "we think we have the man here" or "we think we have the suspect here," would not necessarily be a suggestive statement. It would normally be expected, if one were viewing a line-up, that there apparently is at least one person in that line-up who the police suspect may be the one who committed the crime. The testimony, again, at the suppression hearing, by Officer Swenke, Mrs. Harmon, and her husband, was that Officer Swenke made no suggestion whatever to them at the police station. He simply told her there would be six people she would look at, and he wanted her to look them over and see if she recognized any of them. He cautioned her to be absolutely sure before she said anything. Mrs. Harmon stated at that time to Officer Swenke, and later in open court before the jury, that she observed this man for a period of some fifteen minutes during the encounter in broad daylight, that she was sure that this was the man, and there was no question in her mind. The court properly admitted her testimony into evidence before the jury.

## IV.

Appellant next alleges error in the admission of testimony concerning similar acts. Mrs. Karen Bell testified for the state that on the same day in question, May 2, 1975, she pulled into the same mall parking lot with her daughter. She noticed appellant sitting in a nearby car. After shopping, she returned to the car and it would not start. While she was calling her husband, the defendant walked by her and then stayed around. He asked her if he could help her get her car started. He opened the hood, said it was the coil, and the car thereupon started. Appellant then asked for a ride to another location to buy car parts. She was suspicious of this man so she refused to give him a ride

and drove away. Appellant objected to this testimony on the grounds that it was neither relevant nor competent, and that it attempts to prove this crime by proving the commission of another crime.

All parties agreed that the leading case on this issue is *Woods* v. *State*, (1968) 250 Ind. 132, 143, 235 N.E.2d 486, wherein it was held that, "The general rule in Indiana is that evidence of separate, independent and distinct crimes is inadmissible to establish the defendant's guilt of the crime charged *except to show intent, motive, purpose, identification or a common scheme or plan.*" (emphasis added) Appellant completed or committed no crime with reference to the incident with Mrs. Bell. It is apparent, however, that there were acts that were similar to those involving Mrs. Harmon which would tend to *indicate to reasonable people that appellant intended* to carry on the same encounter with Mrs. Bell that he attempted to do with Mrs. Harmon. The evidence also has the ingredient of identifying appellant as being in the mall parking lot on that day, and as the one who was observing women go into the store in the mall, then fixing their automobiles for them because of coil malfunctions and then requesting a ride to get automobile parts for his own automobile. In addition to the identification feature, we can see common scheme or plan, intent, motive, and purpose in this testimony. The court properly admitted the testimony of Mrs. Bell before the jury.

## V.

Defendant asserts that one of the court's instructions was improper in that in informing the jury of the possible verdicts it could reach, the following language was used:

"If you find the defendant, James A. Pierce guilty of commission or attempting to commit a *crime* while armed with a deadly weapon then the form of the verdict should be: We, the jury, find defendant, James A. Pierce guilty of commission or attempting to commit a *crime* while armed with a deadly weapon and that he shall be imprisoned for

——— years in the state prison (not less than ten nor more than thirty years).''

The jury did in fact return a verdict which found appellant guilty, using the language *felony* rather than *crime,* so that the misuse of the word crime was in the instruction explaining the verdict to the jury and not in the form of the verdict furnished to them. The jury did therefore return a proper verdict under the statute. Though the court was in error in using this language in its instruction, it was harmless error and no prejudice can be shown to appellant by its use.

Appellant further claims the verdict of the jury was contrary to law, inasmuch as the jury found him not guilty of the crime of kidnapping but found him guilty of the crime of committing or attempting to commit a felony while armed with a dangerous and deadly weapon. Appellant argues that if the jury found him not guilty of kidnapping, then they could not find that he committed such an act while armed. It is not within our province to attempt to interpret the thought processes of the jury in arriving at their verdict. The evidence was that before appellant could fulfill whatever plans he had for the victims here, his plans were frustrated by the action of Mrs. Harmon in jumping from the automobile and yelling for help. It is consistent with the evidence that the jury could have found that he attempted to commit a kidnapping while armed with a deadly weapon. Since their verdict is consistent with the evidence presented to them and the definition of the crime as set out in the statutory law, we will not disturb it.

The trial court is affirmed in all specifications.

Givan, C.J., Hunter, J., concur; DeBruler, J., concurs in result with opinion in which Prentice, J., concurs.

OPINION CONCURRING IN RESULT

DeBruler, J.—Constitutional error was committed by the trial court when over defense counsel's objection he permitted

the prosecution's major witness to testify that she had selected appellant from a line-up as her assailant as that line-up was conducted while appellant was being illegally detained in the Crawfordsville Police Station. *Brown* v. *Illinois*, (1975) 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416; *Wong Sun* v. *United States*, (1963) 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441; *Pirtle* v. *State*, (1975) 263 Ind. 16, 323 N.E.2d 634; *Williams* v. *State*, (1976) 264 Ind. 664, 348 N.E.2d 623.

The City Court warrant for failure to appear on a reckless driving charge issued in 1969, six years prior to appellant's arrest on such warrant, did not authorize the police to arrest and detain appellant for the purposes of interrogating him and of placing him in a line-up as a suspect in a kidnapping case, and moreover, the prosecution did not show that the police had independent probable cause to arrest appellant for kidnapping. The police officer in charge of the case and the arrest testified that he used the arrest warrant for purposes unrelated to the failure to appear case, namely, to subject appellant to interrogation about the kidnapping and to put him in a line-up to be viewed by the victim of the kidnapping. Immediately upon arriving at the police station appellant was subjected to that interrogation and line-up. He was not treated in any manner consistent with his having been arrested for failure to appear on a reckless driving charge. No purpose intended to be served by the warrant as issued was in fact served. Moreover, the officer testified that no single effort had ever been made to serve the warrant between the date of its issuance in 1969 and its use in 1975. In my view that warrant did not authorize the police to arrest appellant for kidnapping. See *Ludlow* v. *State*, (1974) 262 Ind. 266, 314 N.E.2d 750.

The police had no information at the time of the arrest which would have caused a person of reasonable caution to believe that appellant had committed this offense. *Wong Sun* v. *United States, supra; Gerstein* v. *Pugh*, (1975) 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54. The police had a description of the assailant by size, age and color of hair. He

had grease under his fingernails and was driving a light colored late model car with a dark top. Appellant had a criminal record which was not detailed in the evidence. Appellant and his car met this general description. Given this information twenty days after the crime, in the form of a probable cause affidavit, I believe a magistrate would not have issued an arrest warrant for appellant.

The *Miranda* rights advisement and appellant's conditional and hesitant agreement to stand in a line-up did not, I believe, dissipate the taint cast upon the line-up and its subsequent verbal description in court by the illegal arrest and detention. The rights advisement did not relate to the staging of a line-up. The hesitant consent was given minutes after appellant arrived at the station house under arrest and constituted no more than a submission to police authority. *Sayne* v. *State*, (1972) 258 Ind. 97, 279 N.E.2d 196.

I vote to affirm this conviction in spite of the constitutional error in the admission of evidence because I am convinced beyond a reasonable doubt that the jury did not use that evidence of the line-up identification in arriving at that degree of certainty necessary to find appellant guilty beyond a reasonable doubt. *Chapman* v. *California*, (1967) 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; *Fahy* v. *Connecticut*, (1963) 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171. Other evidence showed that appellant sought on two different occasions on the same day in the same shopping center parking lot to finagle a ride with a woman through the use of the identical unique artifice. With one he was successful in getting a ride and carrying out his unlawful plan. With the other he was not. However, both women spoke to him at length and had ample opportunity to observe him. Both unequivocally identified him at trial.

Prentice, J., concurs.

NOTE.—Reported at 369 N.E.2d 617.