James S. PORTER, Appellant,

v.

STATE of Indiana, Appellee.

No. 179S33.

Supreme Court of Indiana.

Dec. 7, 1979.

270

Melvin Reed and R. W. Chamblee, Jr., Lark, Reed & Chamblee, P. C., South Bend, for appellant.

Theo. L. Sendak, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., for appellee.

PIVARNIK, Justice.

Defendant-appellant James S. Porter was charged with rape, Ind.Code § 35–13–4–3 (Burns 1975), in Elkhart Superior Court No. I. He was found guilty as charged by a jury on July 12, 1978, and was sentenced by the court on August 10, 1978, to a term of eighteen years. Appellant raises two issues for our consideration: (1) whether the trial court erred in permitting the victim's testimony concerning out-of-court identifications of the appellant-defendant, in spite of the use of impermissibly suggestive identification procedures; and (2) whether the trial court erred in admitting evidence of another crime committed by appellant for the purpose of demonstrating identity or a common scheme or plan.

On the night of May 2, 1977, G. H. awoke when she heard someone in in her apartment. She observed a black man in her room who brandished a knife and ordered her not to move. The man then removed his trousers, forcibly removed G. H.'s panties, and penetrated her before she was able to break away from him. The assailant cut her with the knife several times and threw a plant stand at her during the incident. She ran to a window, threw it open, and screamed for help, whereupon her attacker left.

G. H. examined fifty to sixty photographs on two different occasions and identified appellant in one of those photographs. She later identified Porter in a corporeal lineup. She also made a positive identification of the defendant as her assailant at trial.

## I.

■ Appellant contends the pre-trial identification procedures used by the police were impermissibly suggestive and that the victim, G. H., did not have a sufficient independent basis to make an in-court identification. We have discussed this issue on may occasions. A determination of whether the pre-trial identification procedure is impermissibly suggestive and renders the testimony relating to the identification inadmissible depends upon a consideration of the totality of circumstances. *Deaton v. State,* (1979) Ind., 389 N.E.2d 293, 299; *Pierce v. State,* (1977) 267 Ind. 240, 246, 369 N.E.2d 617, 620; *Gaddis v. State,* (1977) 267 Ind. 100, 107, 368 N.E.2d 244, 249.

The evidence here shows that following the victim's description of her assailant, the police showed her fifty to sixty photographs of black males. On the day following her attack, she looked at a large number of photographs. She stated that one of them looked somewhat like her attacker, but that she could not say for sure. His photograph was not one of the defendant. A few days later, G. H. was asked by the police to examine more photographs. This display consisted of three or four additional photographs. The police asked her to look at these photographs, but did not indicate their opinion as to whether the assailant's photograph was among them. Upon examining these photographs, G. H. immediately selected the defendant's picture.

■ Appellant argues that the display of only three or four photographs on the second showing tended to give the impression to the victim that the police believed the attacker's picture was in this group. It does not appear that this was the outcome here. The victim examined a large number of photographs and said she could not find her attacker except for a possibility that one photograph could be him because some of his features were present. On a second viewing, however, with no encouragement from the police, she positively identified the defendant and testified that there was no question in her mind when she saw the defendant's photograph that this was the

man. There was nothing impermissibly suggestive about this procedure so that the results of it render the testimony inadmissible. *Deaton v. State, supra.*

Following the photograph identification procedures outlined above, the victim, G. H., was called to view a corporeal line-up at the police station. Only three black males were in the line-up. The victim immediately identified the defendant without even looking at the other two individuals. Her testimony at trial was that she recognized the defendant as soon as she saw him. She said she did not even notice the other two and was unable to tell anything about them because as soon as she saw the defendant she knew he was the man. She stated before the jury that as soon as she looked at him she said to herself, "There's that son-of-a-bitch." G. H. testified that she had a small light on in her kitchen which illuminated her bedroom to the extent that she could observe the man during the attack. She said that he was very close to her for three or five minutes and that she saw his face very clearly. She said that his face was so fixed in her mind that she had dreams about it and recognized his face as soon as she saw it.

■ It is true that a line-up of only three or four persons is generally considered inadequate. A line-up of at least five or six persons is recommended. Depending upon the surrounding circumstances, however, identification of an individual in a line-up of less than five or six does not render the testimony regarding this identification inadmissible per se. For example, in *Clark v. State,* (1978), Ind., 380 N.E.2d 550, 554, we noted that although a one man show-up is generally held to be impermissibly suggestive, such show-ups are not necessarily to be condemned; depending upon surrounding circumstances, the show-up may not have been unnecessarily suggestive, and there may have been no denial of defendant's due process rights. *See Neil v. Biggers,* (1972) 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401. In examining the testimony of the victim and the police witnesses here, we cannot conclude that the trial court

erred in refusing to find that the composition of the line-up influenced the victim in identifying her attacker. She emphatically stated that she recognized him immediately and was unaware of the other individuals in the line-up. *Clark v. State, supra; Mitchell v. State,* (1978) Ind., 376 N.E.2d 473, 474–75; *Tewell v. State,* (1976) 264 Ind. 88, 98–99, 339 N.E.2d 792, 799. The court properly permitted the victim to testify as to her pre-trial identification of the defendant.

## II.

The trial court permitted State's witness, B. W., to testify regarding an incident involving herself and the defendant. B. W. knew the defendant personally and lived near the residence of the defendant. Both of their residences were near the residence of G. H., the victim in the case at bar. The incident involving B. W. happened within four days of the incident here.

■ The record shows that defendant objected to the testimony of this witness by making a general objection. He indicated to the court that he wished a continuing objection to all of her testimony. This procedure was approved by the court. Although there was not a specific ground for the objection given, it appears that the court understood the grounds on which defendant was objecting and preserved his record upon this issue. We will therefore consider the issue on the merits.

■ Evidence of crimes separate and distinct from the crime charged is generally not admissible. However, it is well established that evidence of other crimes may be used to prove intent, purpose, motive, identity or a common scheme or plan. *Willis v. State,* (1978) Ind., 374 N.E.2d 520, 522; *Pierce v. State,* (1977) 267 Ind. 240, 248, 369 N.E.2d 617, 621. We have reasoned the rule to be that such evidence may be admissible, in spite of its tendency to show the accused guilty of other crimes, if it proves a fact in issue and its probative value outweighs its prejudicial effect. *Feyerchak v. State,* (1978) Ind., 383 N.E.2d 1027, 1028; *Grooms v. State,* (1978) Ind., 379 N.E.2d 458, 462.

B. W. testified that she knew the defendant because she had done some babysitting for a person who owned the house in which the defendant roomed. She stated she had seen him in and about that house while she was there babysitting. On May 5, 1977, at about 5:00 a. m., she was awakened by someone standing in her doorway. She jumped out of bed and asked who was there. The defendant then grabbed her by the arm very firmly and told her to be quiet or she would get hurt. She knew her mother was sleeping downstairs, so she screamed and fought her assailant. The defendant finally left, escaping the same way he had entered, by putting a ladder to the window of her brother's bedroom next to hers and breaking a window.

■ Appellant urges that this situation is not similar enough to the case before us since no weapon was seen by B. W., whereas a knife was used by the attacker of G. H., and no sex was involved in the case of B. W., whereas G. H. was raped. Both of the victims were attacked, however, during the early morning hours, and both victims slept alone in an upstairs bedroom. In the incident involving B. W., the victim leaped from her bed and met the defendant at the door, and by her screams alerted him that there was someone else in the house. The fact that B. W. interrupted and confronted her attacker accounts for the factual differences regarding the presence of a weapon and the extent of the attack. Appellant, however, accosted her in her bedroom during the night hours and threatened her to be quiet and cooperate with him or she would be harmed, as was G. H. in the case at bar. The second attack occurred near the first, and both took place close to the place where appellant was living. Furthermore, they were close together from a time standpoint. It appears, therefore, that the trial court properly determined that the two crimes were sufficiently similar to support an inference that appellant was the perpetrator of both attacks. Because identity was in issue at trial, the testimony of B. W. was of probative value, sufficient to

make it competent evidence. *Willis v. State, supra.*

Finding no error, we affirm the judgment of the trial court.

All Justices concur.