**David George KIMMEL, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 879S213.

Supreme Court of Indiana.

April 7, 1981.

John D. Clouse, Michael C. Keating, Evansville, James Lowenthal, Coleman, Lowenthal & Lofton, Bloomington, for appellant.

Theodore L. Sendak, Atty. Gen., Frank A. Baldwin, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

After a trial by jury the appellant was sentenced on February 20, 1979, to imprisonment for an indeterminate period of not less than ten (10) nor more than twenty (20) years for burglary, and to imprisonment for fifteen (15) years for the offense of sodomy while armed with a dangerous weapon. He appeals.

Appellant raises five issues for our review. These concern the admission of evidence, the overruling of his Motion to Permit the Production of Evidence of Jury Impropriety, the denial of his Motion for Serology Examination, the trial court's refusal to admit polygraph test results, and the sufficiency of the evidence.

On the evening of June 12, 1977, the victim and her roommate were in their residence at the Ardmore Apartments in Bloomington, Indiana. Both went upstairs to their bedrooms around 10:00 p. m. K. G. went to her bedroom, closed the door, turned out the light and went to bed. The victim, D. C., went to her room, read for a while, and then turned out the light and went to sleep. She awoke around 2:00 a. m. on the morning of June 13, 1977, with someone's hand over her mouth and nose. She struggled briefly. She was told repeatedly not to scream. She said that she would not scream and the person took his hand away. He leaned over her, said he was lonely and wanted to talk, and sat down on the bed. He told her his name was John and that he had come from the train yard. He told her that if she wouldn't scream he would take the knife away from her neck. After taking the knife away, he continued to hold it while he talked. D. C. described this knife as a Bowie knife about ten inches long. The man smoked a cigarette and extinguished it in the wastebasket. He began touching her and she asked him to stop. He put the knife against her neck and told her to be quiet. He removed her gown and asked her if she had any baby oil. She said she did not, but that she had some lotion on the dresser. He put lotion on her, made her turn over and get on her knees. He had anal intercourse with her, zipped his pants, told her not to tell anyone, and left. She heard him stand outside her room for a while, and then heard him going down the stairs. She heard the front door open and the chain catch. She heard him take off the chain and open the door. She got up, locked the door and went to her roommate's room. She told her roommate that she had been raped. They checked the apartment and called the police. They went downstairs and noticed that the kitchen window was open.

Three police officers arrived and searched the area. A gumball and a Vantage regular cigarette butt were found on the sidewalk. Fingerprints were lifted from the inside door knob of the living room door. A Vantage regular cigarette butt was recovered from the wastebasket in D. C.'s room.

The victim gave a description of her assailant to police and she was taken to the Bloomington Hospital. Dr. Bill Adamson examined her and determined that she had scratches or cuts on her face, neck, and rectal area. It was his opinion that she had had anal intercourse.

The victim later gave a statement and helped to construct a composite picture of her attacker. In August, 1977, she viewed a photographic lineup of eight individuals

and picked one out of that lineup. Two or three weeks later she viewed a live lineup with this person in it and failed to pick him out. This person was not the appellant. In January of 1978, she viewed a second live lineup in which the individuals spoke certain phrases. At that lineup she picked out the appellant. At trial she testified that this person's voice, hair and facial features were the same as her attacker's although she admitted that she was not absolutely positive about the identification.

## I.

Appellant first claims that the trial court erred in admitting evidence that he had committed another crime which was unrelated to the one for which he was being tried. Christean Eznor was permitted to testify, and she related that on December 23, 1977, a man rang the doorbell of her apartment at approximately 2:00 a. m. He asked if Lisa Cunningham lived there. She responded, "No" and the man said, "Well, she's supposed to live in Beau Trace Apartments." Those apartments were located on the other side of Bloomington. Eznor said she was sorry but she did not know Lisa Cunningham and had never heard of Beau Trace Apartments. She shut the door and locked it. She was frightened and looked in the Bloomington directory and the I. U. student directory but could find no listing for a Lisa Cunningham. She went upstairs and then returned downstairs to find the front door open as far as possible with the chain attached. She walked into the dining room and saw a man peering in her window. He ducked beneath the window. She pounded on the window and he stood up. She then called the police.

Two officers arrived approximately five minutes later. Christean was showing them the window where she had seen the man when officer Pickell saw a person meeting her description walk across Eighth Street. The officers stopped him and on frisking him found a steak knife in his pocket. This knife was approximately seven or eight inches long. This individual was the appellant, Kimmel. He told the

officers that he had used the knife to clean rabbits. Kimmel was charged with Public Intoxication and Carrying a Concealed Weapon. He pleaded guilty to Public Intoxication. The charges of Carrying a Concealed Weapon were dismissed. Appellant argues that this incident was not sufficiently similar to the incident of June 13, 1977, to warrant its admission.

The general rule in Indiana concerning the admission of evidence of separate, independent crimes or acts committed by an accused is that such evidence is inadmissible. There are exceptions to this rule recognized by our courts. It is well established that evidence of other crimes may be used to prove intent, purpose, motive, identity or a common scheme or plan. *Porter v. State*, (1979) Ind., 397 N.E.2d 269; *Willis v. State*, (1978) Ind., 374 N.E.2d 520, 522; *Pierce v. State*, (1977) 267 Ind. 240, 248, 369 N.E.2d 617, 621.

The incident which occurred on December 23, 1977, which was the subject of Christean Eznor's testimony occurred at 2:00 a. m. in Bloomington. David Kimmel was arrested after he had gone to an apartment and asked for a woman who did not live there. Ms. Eznor had gone upstairs and returned to find the front door open as far as the chain would permit and noticed someone ducking beneath her window. When apprehended, Kimmel was found to have a seven or eight inch knife in his pocket and was intoxicated. He was smoking Vantage cigarettes.

The incident which is the basis for this appeal also occurred in Bloomington at 2:00 a. m. The victim also lived in an apartment. The window was broken in, and Kimmel's fingerprint was found on the living room door. This incident involved burglary, and sodomy while armed with a dangerous weapon, a knife, by an individual who had been drinking. Vantage cigarettes were found outside, and the attacker had extinguished one in the wastebasket.

The State argues that this case is so similar to that of *Porter v. State*, (1979) Ind., 397 N.E.2d 269, that the evidence of the other crime should be admitted. The

argument is also made that here, as in *Porter*, the only discrepancies are due to the fact that the defendant's efforts were effectively thwarted by the victim. In *Porter*, the victim was awakened when she heard someone in her apartment. She observed a black man in her room brandishing a knife and ordering her not to move. He removed his trousers, removed the victim's panties, penetrated her and then cut her with the knife several times and threw a plant stand at her. She ran to a window, opened it and screamed for help, whereupon her attacker left. The other incident in *Porter*, testified to by a State's witness which was allowed into evidence was that of another victim, who knew the defendant personally and lived near the defendant's residence. This victim testified that she was awakened by someone standing in her bedroom doorway. She jumped out of bed and asked who was there. The defendant grabbed her and told her to be quiet or she would get hurt. She screamed and fought her assailant. He finally left, escaping the same way he had entered, by putting a ladder to the window of her brother's bedroom next to hers, and breaking a window.

In *Porter, supra*, it was apparent that no sex was involved because of the interruption and that no knife was used. Both victims were attacked in their upstairs bedrooms during the early morning hours. Both were threatened to be quiet and to cooperate or they would be harmed. The second attack occurred near the first, both geographically and in time. These facts were considered to be sufficiently similar to support an inference that the appellant was the perpetrator of both attacks and this Court found the testimony of sufficient probative value to make it competent evidence.

Here, it is also apparent that Kimmel was interrupted by Christean Eznor's calling the police. These incidents both occurred around 2:00 a. m., in the city of Bloomington. Both women lived in apartment complexes. In the first incident, entry was made through a window, and Kimmel's fingerprint was found on the inside door knob. In the second incident, the door was opened as far as possible until stopped by the chain and Kimmel was observed under the window. Vantage cigarette butts were left at the scene of the first incident and Appellant Kimmel was smoking Vantage cigarettes when he was arrested in the second incident. The perpetrator of the first attack threatened his victim with a knife and Kimmel was carrying a knife when he was arrested. In both incidents, the man involved had been drinking. These facts are sufficiently similar to support an inference that the appellant was the perpetrator of both attacks, and we find this testimony to be of sufficient probative value to make it competent evidence.

## II.

The appellant also claims that the trial court erred in denying defendant's motion to permit defendant to produce evidence of jury impropriety.

During the trial of this cause, on January 24, 1979, an article appeared in a local newspaper, the *Indiana Daily Student*, stating that the victim testified that she had previously identified the defendant in a line-up. The next day a correction appeared in the paper, stating that Police Sgt. Barbara Webb had said that the victim had identified the defendant in the line-up.

The jury returned its verdict on January 26, 1979. On February 8, 1979, defendant filed a "Verified Motion to Permit Defendant to Produce Evidence of Jury Improprieties." This motion was denied on February 13, 1979. In his motion to correct errors the defendant filed additional affidavits in support of his Motion.

Affidavits by Kimmel's sister, brother, girlfriend and another individual asserted that they had seen copies of the newspaper in the jury room. Kimmel's attorney, James Lowenthal, filed an affidavit that Hugh Martin of the *Indiana Daily Student* contacted Lowenthal and stated that he had spoken with three jurors who admitted that the *Indiana Daily Student* and other newspapers were in the jury room on a daily basis during the trial of this cause. Each of the jurors had denied that they had read any articles in any newspaper.

The judge denied the motion and stated his reasons for doing so. The reasons, in brief, were that no impropriety by any juror was alleged, only the possibility of a view of a headline; that there was no allegation that such a headline was prejudicial to the defendant; that the allegations were based on a volunteered hearsay statement; that there was no allegation that the printed information was falsified or contained any facts not presented to the jury at trial; that the jurors contacted denied having read any article and stated that any paper in the jury room was covered; and that it was the law that a jury's verdict could not be impeached by testimony of jurors. The court denied defendant's request for a hearing.

Appellant relies heavily on *Lindsey v. State*, (1973) 260 Ind. 351, 295 N.E.2d 819 in his argument that the trial court's failure to interrogate the jurors regarding the alleged impropriety was reversible error. In *Lindsey, supra,* this court held that the trial court's failure to interrogate the jury regarding alleged improprieties was reversible, but it was made clear that the risk of prejudice must be substantial. In *Lindsey,* the publicity complained of contained erroneous and inadmissible information. In *Bruce v. State,* (1978) 268 Ind. 180, 375 N.E.2d 1042 the *Lindsey* procedure was analyzed further and two types of prejudicial reports were discussed; (1) inflammatory matter which would not be admissible at trial and (2) misstatements or distortions of the evidence given at trial.

Here, the newspaper article involved simply stated on one day that the victim testified that she had previously identified the defendant. The next day, a correction appeared stating the Police Sgt. Barbara Webb had said that the victim had identified the defendant in a line-up. This newspaper statement was correct except for the reporter's error as to who had made the statement. In *Lindsey, supra,* and in *Bruce, supra,* this Court emphasized that if the risk of prejudice appears substantial, the court should interrogate the jurors as follows:

"Upon a suggestion of improper and prejudicial publicity, the trial court should make a determination as to the likelihood of resulting prejudice both upon the basis of the content of the publication and the likelihood of its having come to the attention of any juror. If the risk of prejudice appears substantial, as opposed to imaginary or remote only, the court should interrogate the jury collectively to determine who, if any, has been exposed." *Bruce v. State,* (1978) 268 Ind. 180 at 217, 375 N.E.2d at 1063.

The situation in the present case is further distinguished from the situation in *Lindsey* because this alleged prejudicial publicity was not brought to the judge's attention until after the verdict. In *Hardiman v. State,* (1978) Ind.App., 377 N.E.2d 1384, the First District of the Court of Appeals considered this precise issue and held that the precautionary procedures set forth in *Sacks v. State,* (1977) Ind.App., 360 N.E.2d 21 [which were the *Lindsey, supra,* procedures] do not apply when alleged jury misconduct was not brought to the court's attention until after the verdict had been rendered.

The trial court here considered the alleged jury impropriety as presented in defendant's motion filed on February 8, 1979, and in defendant's motion to correct errors. The court considered the matter on the basis of its content and the likelihood of its having come to the attention of any juror. It is clear that the trial judge determined that there was no substantial risk of prejudice because of the newspapers or articles. There is no error on this issue.

### III.

Appellant next claims that the trial court erred in denying his motion for serological examination. Appellant Kimmel had filed a Petition for Serological Examination of Semen on February 5, 1979, which was granted on February 6, 1979. He filed another Motion for Serological Examination on April 18, 1979, which was directed to obtaining the blood type and secretor status of the victim. This motion was denied on

the same day. The jury had returned their verdict on January 26, 1979, and Appellant was sentenced on February 20, 1979. Appellant argues that the denial of the motion filed April 18, 1979, constitutes error under Ind.R.Tr.P. 59(A)(5), uncorrected error of law occurring and properly raised subsequent to trial and under Ind.R.Tr.P. 59(A)(6), newly discovered evidence. He claims that it was from the last witness on Thursday, January 25, 1979, the day before the verdict, that he learned that a valid test was available from which blood type or group could be determined from semen samples taken from the victim. Kenneth Houck, a laboratory technician testified that such test could be conducted if semen samples had been taken and retained. At trial, Dr. Anderson, the gynecologist who had examined the victim, reiterated his opinion that such tests were unavailable. Appellant claims that the possibility exists that if these tests were made, it is possible that the results would be favorable to him. He also is basing his claim on the fact that he learned about the possibility of making such a test only when Kenneth Houck testified on the day before the verdict was rendered. Kenneth Houck was a defense witness, and it appears that with reasonable diligence the defense could have discovered that such a test was possible before trial.

Trial Rule 59(A)(6) provides for relief in the event of "newly discovered material evidence which could not, with reasonable diligence have been discovered and produced at the trial." "Motions predicated upon newly discovered evidence are viewed with disfavor. The grant or refusal thereof is a matter within the discretion of the trial court, and upon review, we will reverse the trial court's denial of such motion only if it could not reasonably have reached a conclusion that, upon re-trial, a different result would not be probable. *Williams v. State*, (1973) 261 Ind. 385, 304 N.E.2d 311; *Beyer et al. v. State, supra.*" *Helton v. State*, (1980) Ind., 402 N.E.2d 1263, 1267.

Defendant's proper remedy, if he were surprised at trial by the testimony of Kenneth Houck, would have been to seek a continuance. *Washington v. State*, (1980) Ind., 402 N.E.2d 1244; *Minton v. State*, (1978) Ind., 378 N.E.2d 639. By failing to move for a continuance, appellant has waived any alleged error. *Siblisk v. State*, (1975) 263 Ind. 651, 336 N.E.2d 650. There is no error on this issue.

## IV.

Appellant seeks to have this court reconsider and reverse its position on the use of polygraph examinations. He admits that the trial court abused no discretion in refusing to admit polygraph results or to allow reference to them. His argument is designed to plead for a change in law. His argument is based on his contention that the polygraph is a valid and reliable instrument when in the control of a competent operator. He additionally claims that the results of such an examination, in the opinion of the operator, proved Kimmel was not guilty of the offenses charged.

It is well settled in Indiana that the results of a polygraph examination of a witness or a party are inadmissible in a criminal prosecution absent a waiver or stipulation by the parties. *Pavone v. State*, (1980) Ind., 402 N.E.2d 976; *Tope v. State*, (1977) 266 Ind. 239, 362 N.E.2d 137, *cert. denied* 439 U.S. 869, 98 S.Ct. 209, 54 L.Ed.2d 146. This Court has specifically stated its concerns that the test is not sufficiently accurate to mandate its admission. *Vacendak v. State*, (1976) 264 Ind. 101, 340 N.E.2d 352, *cert. denied* 429 U.S. 851, 97 S.Ct. 141, 50 L.Ed.2d 125. This Court has also expressed its fear that the jury will give undue weight to a polygraph test's validity. *Williams v. State*, (1978) Ind., 375 N.E.2d 226 at 227. We reaffirm our holdings that polygraph examinations and results are inadmissible in a criminal prosecution absent a waiver or stipulation by the parties.

## V.

Appellant finally claims that the evidence against him was insufficient to sustain his conviction. He does not argue that the State failed to prove any element of the crimes. Rather, he claims that there was

insufficient evidence to identify him as the perpetrator.

When the issue of sufficiency of the evidence is raised on appeal, this Court will neither weigh the evidence nor determine the credibility of witnesses. Rather, we will consider only the evidence which is most favorable to the State, together with all reasonable inferences to be drawn therefrom, and if, from that evidence a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt, the conviction should be affirmed. *Willard v. State*, (1980) Ind., 400 N.E.2d 151.

The evidence as previously set out in this opinion revealed that a fingerprint identified as that of the appellant Kimmel was found on the inside door knob of the living room door. The victim picked Kimmel out of a live lineup in which each individual spoke certain phrases, testifying that his voice was "the same voice I heard that night." She also stated that his hair color and facial features were as she had described. Both the perpetrator of this crime and Kimmel smoked Vantage cigarettes.

Appellant contends that it is necessary to establish that the fingerprint could have been impressed only at the time the crime was committed and that this was not done. His argument is that he explained that he attended a party a month prior to the incident in this apartment and that that was when his fingerprint was made on the door knob. He contends that this explanation should have been believed.

A fingerprint expert testified that if someone had touched the print it would have been erased or smudged, or a double impression would have been left. The victim and her roommate testified that during their residence in the apartment a cable T. V. man had used the door and that they used the door. A witness who was a resident of the apartment at the time Kimmel alleged he attended a party there did not recall seeing him at the party. The jury was not required to believe the appellant's explanation of his fingerprint on the door knob.

In *Paschall v. State*, (1972) 152 Ind.App. 408, 283 N.E.2d 801, the Court of Appeals held that the presence of a fingerprint of the defendant found on the inside door knob of a burglarized house was sufficient to establish the defendant's identity as the burglar. The Court of Appeals quoted the following language from *Shuemak v. State*, (1970) 254 Ind. 117, 258 N.E.2d 158:

"Under the circumstances it is universally recognized a finger, palm or bare footprint found in the place where a crime was committed may be sufficient proof of identity."

152 Ind.App. at 412, 283 N.E.2d at 804. Here the evidence was sufficient.

Judgment affirmed.

GIVAN, C. J. and HUNTER and DeBRULER, JJ., concur.

PRENTICE, J., dissents without opinion.