Jerry BYRER, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 3–1080A322.

Court of Appeals of Indiana, Third District.

July 27, 1981.

C. Wayne Fountain, Trueblood & Fountain, Lafayette, for appellant.

Linley E. Pearson, Atty. Gen., Gordon R. Medlicott, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

A jury found Jerry Byrer guilty of robbery while armed with a deadly weapon,[1] a Class B felony. The trial court entered judgment and sentenced Byrer to the Indiana Department of Correction for a period of nine years.

On appeal, Byrer raises the following issues for review:

(1) Was there sufficient evidence to support the jury's verdict?

(2) Did the trial court err in permitting the admission of evidence which implicated Byrer in the commission of a separate offense?

Affirmed.

I.

Sufficiency of Evidence

Byrer contends there was insufficient evidence to establish that he participated in or had knowledge of the armed robbery for which he was convicted. When the sufficiency of the evidence is challenged, this Court will consider only that evidence and the reasonable inferences drawn therefrom which are most favorable to the State. The judgment will be affirmed if there is substantial evidence of probative value which supports the jury's verdict. This Court will not weigh the evidence or assess the credibility of the witnesses in its review. *Wash v. State* (1980), Ind.App., 408 N.E.2d 634, 636–37.

The evidence most favorable to the State reveals that in the late hours of November 18, 1978, James Moriarty, Daniel Harrison, and James Wilson gathered in Moriarty's motel room in Plymouth, Indiana, and planned the burglary of a nearby house. Byrer, who had driven Harrison to Plymouth from West Lafayette, Indiana was present in the motel room during the discussion of the planned burglary. After finalizing the burglary plans, the four men left the motel in a pick-up truck driven by Byrer and proceeded to the home of Moriarty's father to obtain guns for the burglary. Later, they travelled to the selected rural residence to carry out their plans.

Byrer drove his pick-up truck onto a lane adjacent to a set of railroad tracks that ran behind the house. Moriarty, Harrison, and Wilson exited from the pick-up truck and proceeded toward the house. Byrer remained in the pick-up truck. While Wilson waited near the garage, Moriarty and Harrison burglarized the house. Upon their entry, the intruders encountered the occupants. With their guns drawn, Moriarty

1. IC 1976, 35–42–5–1 (Burns Code Ed., 1979 Repl.)

and Harrison robbed the occupants of approximately $80.00 in cash and a revolver which the occupants kept on top of the refrigerator. Then, they returned to Byrer's pick-up truck, and Byrer drove Moriarty and Wilson to the motel in Plymouth. Later, Byrer returned to West Lafayette with Harrison.

The money obtained during the robbery was divided. Byrer received part of the robbery proceeds, although the exact amount was not established at trial. Moriarty testified that he gave Byrer $40.00 of the proceeds, while Harrison stated that he gave $20.00 to Byrer "for gas." Byrer admitted receiving the money from Harrison.

Byrer contends he did not participate in the robbery. He does not dispute his role as the driver of the pick-up truck that transported Moriarty, Harrison, and Wilson to and from the scene of the robbery. Nevertheless, Byrer contends he had no knowledge of his confederates' intent to perpetrate an armed robbery at the rural residence nor did he participate in the commission of the offense. The defense asserted by Byrer is that he was merely the "innocent driver" of the vehicle which transported the others.

■ Byrer's contention must fail in light of the overwhelming evidence in the record which indicates that he had knowledge of and participated in the criminal conduct of his confederates. The trial court instructed the jury that it could find Byrer guilty of armed robbery if he aided the actual perpetrators in the commission of the robbery.[2] The trial court's instruction was predicated upon IC 1976, 35–41–2–4 (Burns Code Ed., 1979 Repl.), which provides:

"A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense, even if the other person:

"(1) Has not been prosecuted for the offense;

"(2) Has not been convicted of the offense; or

"(3) Has been acquitted of the offense."

■ A person who aids another person to commit an offense is equally as guilty as the actual perpetrator of the offense. Ross v. State (1978), 268 Ind. 608, 613, 377 N.E.2d 634, 637. In determining whether a person aided another person to commit an offense, the trier of fact may consider the former's "affirmative conduct either in the form of acts or words from which reasonable inferences of a common design or purpose to effect the commission of a crime might be drawn." Buhrt v. State (1980), Ind., 412 N.E.2d 70, 71, quoting, Pace v. State (1967), 248 Ind. 146, 148–49, 224 N.E.2d 312, 313. The facts and circumstances of each case must be reviewed to determine whether a person participated in the commission of an offense as an accomplice, for, as Justice Hunter observed, there are no "hard and fast rules in this area of the law." Pace, supra, 248 Ind. at 149, 224 N.E.2d at 314. When evaluating the facts and circumstances of each case, it must be remembered that mere presence at the scene of the offense is insufficient to establish that a person aided another person to commit an offense. Bond v. State (1971), 257 Ind. 95, 99, 272 N.E.2d 460, 463. Negative acquiescence in the commission of the offense is likewise insufficient to render a person guilty as an accomplice. Buhrt, supra, 412 N.E.2d at 71. Rather, various facts and circumstances, such as the following, must be evaluated when accomplice culpability is in issue:

"[E]vidence of companionship with one engaged in a crime, a course of conduct before and after the offense, and failure to oppose the crime when imposed with a duty to do so, without active participation in the commission of the crime, are circumstances which may be considered in determining whether aiding and abetting may be inferred. Cotton v. State (1965), 247 Ind. 56, 211 N.E.2d 158. However, an inference from such evidence, to be reasonable, must be coupled with evidence of

2. In the presence of evidence showing the defendant aided in the commission of an offense, the trial court may give an instruction on ac-

complice liability even though the defendant has been charged as a principal. Lawson v. State (1980), Ind., 412 N.E.2d 759, 763.

knowledge or evidence from which knowledge may be reasonably inferred, that the criminal conduct is contemplated, in progress or completed."

*Fox v. State* (1979), Ind.App., 384 N.E.2d 1159, 1165; *see also, Bigbee v. State* (1977), 173 Ind.App. 462, 471–72, 364 N.E.2d 149, 155. The evidence need not show that the accomplice personally participated in the commission of each element of a particular offense. *Coleman v. State* (1976), 265 Ind. 357, 361, 354 N.E.2d 232, 235.

The record in the present case reveals that Byrer had knowledge of and participated in the criminal conduct of his confederates. Byrer's knowledge of the planned offense was established during his direct testimony when he stated:

"[Daniel Harrison] told me that Jim Moriarty had called him and that he had some kind of a job lined up, which I knew meant probably burglary, because I knew that Daniel had done several burglaries at the time...."

His confederates asked Byrer if they could use his pick-up truck for their planned offense. Byrer consented, but he volunteered to drive it rather than remaining at the motel while his pick-up truck was gone. His thoughts, as stated during direct examination, at the time he consented to drive were the following:

"I did not intend to just stand on a corner and wait while the truck came back to me. So I said that I would drive. I had no idea at this time what exactly what they were planning, other than the fact that I felt that they were probably going to do a burglary."

The record is replete with other facts and circumstances that would lead to the reasonable inference that Byrer had knowledge of the criminal purpose of the trip to the rural house. Plans for the burglary were discussed in Byrer's presence. Byrer voluntarily drove his confederates down a rural lane at night and waited in the dark while the others, who carried guns, approached a nearby house. Byrer carried a gun while driving to the rural lane and then gave it to Harrison before Harrison proceeded toward the house.

Two days after the robbery, Byrer, while in custody for the commission of another offense, voluntarily recited the details of the Plymouth robbery and admitted that he drove the pick-up truck to the scene of the robbery. This evidence, when viewed in its totality, would support the reasonable inference that Byrer had knowledge of the criminal conduct planned for the evening by his confederates.

■ The evidence showing that Byrer participated in the offense must now be examined. Byrer participated in the robbery by driving his confederates to the scene, waiting nearby while the offense was perpetrated, and providing a getaway for the robbers once the offense was completed. Although he knew the others were going to burglarize the house, Byrer did not attempt to abandon the criminal enterprise, nor did he do anything to protest his participation. Furthermore, Byrer shared in the proceeds of the robbery. Participation in the scheme for escape is adequate to establish criminal culpability as an accomplice. *Williams v. State* (1979), Ind., 395 N.E.2d 239, 245.

■ It has also been held that giving a gun to the actual perpetrator of the offense and then waiting at the wheel of a vehicle to insure a quick escape provides a sufficient factual basis from which it may be concluded that the defendant participated in a robbery. *Pinkler v. State* (1977), 266 Ind. 467, 470, 364 N.E.2d 126, 127. It is not important that Byrer thought his confederates originally intended to commit only a burglary. The criminal liability of an accomplice is not negated by the principal's commission of an offense greater in severity than the offense originally planned if the resulting offense is a probable and natural consequence of the planned offense. *Proctor v. State* (1979), Ind., 397 N.E.2d 980, 983; *Atherton v. State* (1967), 248 Ind. 354, 356, 229 N.E.2d 239, 241; *Breaz v. State* (1938), 214 Ind. 31, 34–35, 13 N.E.2d 952, 953. The probable and natural consequence of the commission of a burglary is a robbery if the perpetrators are confronted by the occupants of the house. Therefore, the rec-

ord contains sufficient evidence from which the jury could have reasonably inferred that Byrer knowingly and voluntarily aided Morarity, Harrison, and Wilson in the commission of the armed robbery.[3]

## II.

### Other Offense

Byrer contends the trial court erred in permitting the admission of evidence which implicated him in the commission of a separate offense. This evidence, Byrer contends, was not relevant to prove any fact in issue, and its prejudicial effect outweighed any probative value it might have had. The evidence to which Byrer objected consists of the testimony of three police officers who stated that two days after the Plymouth robbery, they arrested Byrer after he exited from a Hook's Drug Store in West Lafayette, Indiana. The police had "staked-out" the drugstore after learning from a confidential informant that it was to be the scene of an armed robbery. No robbery occurred, but Byrer was arrested for and charged with conspiracy to commit robbery. The police also arrested two other persons, one of whom was Daniel Harrison, a participant in the Plymouth robbery. A search of Byrer immediately after his arrest revealed that he was carrying a gun and the floor plans of the Hook's Drug Store. At the time of Byrer's trial for the Plymouth robbery, Byrer had not been tried for the Hook's incident.

Byrer's assignment of error must be reviewed under the principles set forth in *Watts v. State* (1950), 229 Ind. 80, 95 N.E.2d 570, and recently restated in *Montgomery v. State* (1980), Ind., 412 N.E.2d 793, 795, as follows:

"The general rule in Indiana concerning the admission of evidence of separate, independent crimes or acts committed by an accused is that such evidence is inadmissible. There are exceptions to this rule recognized by our courts. It is well established that evidence of other crimes may be used to prove intent, purpose, motive, identity or a common scheme or plan. *Porter v. State*, (1979), Ind., 397 N.E.2d 269; *Willis v. State*, (1978), 268 Ind. 269, 374 N.E.2d 520, 522; *Pierce v. State*, (1977), 267 Ind. 240, 248, 369 N.E.2d 617, 621 . . . ."

The State contends that the evidence of the Hook's incident was admissible under the "common scheme or plan" exception to the general rule excluding evidence of other offenses or acts of misconduct. In its brief, the State asserts that the similarities between the Plymouth robbery and the Hook's incident are "driving to the scene with others, and carrying the same gun." The State's argument in support of the admissibility of the evidence is hardly persuasive. The "common scheme or plan" exception "requires much more than mere repetition of similar crimes." *Williams v. State* (1981), Ind., 417 N.E.2d 328, 332, *quoting, Biggerstaff v. State* (1977), 266 Ind. 148, 152, 361 N.E.2d 895, 897. As stated by the Supreme Court, the similarities between offenses or acts of misconduct must be so unusual and distinctive so as to be "like a signature." *Id.*

The similarities between the Plymouth robbery and the Hook's incident are at best tenuous, if not nonexistent. Nevertheless, the trial court properly admitted the evidence in question on other grounds. Other offenses or acts of misconduct may be admissible when the scienter or guilty

---

3. The "innocent driver" defense has been reviewed in numerous Indiana appellate decisions, and, as previously stated, the merit of the defense has been tested by engaging in an evaluation of the facts and circumstances of each case. For cases in which the convictions of "innocent drivers" have been reversed, *see Pace v. State* (1967), 248 Ind. 146, 224 N.E.2d 312; *Conrad v. State* (1977), Ind.App., 369 N.E.2d 1090. For cases in which it was determined that the record contained sufficient evidence from which the guilt of the drivers of getaway vehicles could have been inferred, *see Williams v. State* (1979), Ind., 395 N.E.2d 239; *Pinkler v. State* (1977), 266 Ind. 467, 364 N.E.2d 126; *Dozier v. State* (1976), 264 Ind. 329, 343 N.E.2d 783; *Kyles v. State* (1979), Ind.App., 391 N.E.2d 642; *Smithers v. State* (1979), Ind. App., 385 N.E.2d 466; *Dolan v. State* (1978), Ind.App., 381 N.E.2d 543; *Jones v. State* (1978), Ind.App., 380 N.E.2d 604.

knowledge of the accused is in issue. *Coker v. State* (1980), Ind.App., 399 N.E.2d 857, 860; *see also, Watts, supra,* 229 Ind. at 103, 95 N.E.2d at 580. As stated in the first section of this opinion, Byrer's knowledge of his confederates' criminal intent was an issue. The evidence of the Hook's incident was introduced, as explained by the prosecutor during argument on the issue of intent, to show that Byrer knew he was driving his confederates to a house outside of Plymouth for the purpose of committing a criminal offense. The evidence of the Hook's incident showed that Byrer accompanied Harrison on another occasion which clearly involved the possibility of criminal conduct. Byrer's knowledge of the criminal purpose at Plymouth could have been inferentially shown by his complicity with Harrison in perpetrating another offense. Thus, the trial court did not err in admitting the evidence.

Affirmed.

HOFFMAN, P. J., and GARRARD, J., concur.