**Kerry Dale FOUST, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 381S72.**

Supreme Court of Indiana.

Dec. 4, 1981.

Bruce W. Graham, Public Defender, Tippecanoe County, Lafayette, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Appellant Foust was convicted in Tippecanoe Superior Court No. 2 after a trial by jury for the crimes of Burglary, I.C. 35–43–2–1 and Theft, I.C. 35–43–4–2, and was found to be an habitual criminal. He was sentenced to five years on Count I, Burglary, and to two years on Count II, Theft, said sentences to run concurrently. Appellant was also sentenced to thirty years on Count III, Habitual Criminality, and this sentence was to run consecutively to the sentences in Count I and Count II.

Appellant Foust appeals, alleging that the court erred in admitting evidence of a prior offense; in allowing the State to cross-examine the defendant regarding this offense, and in refusing a tendered final instruction.

Pfrommer Brothers Television and Appliance store was located at 707 Main Street in Lafayette, Indiana. The store had been closed and had been locked about noon on April 12, 1980. On the afternoon of April 13, Inez Hicks, who lived at 707½ Main Street above Pfrommer Brothers, noticed pry marks on the store door. Investigation of the store revealed that the door had been pried open and that several Zenith and Magnavox color portable television sets, most of which were 19 inch sets, were missing from the store along with a microwave oven and a small amount of cash.

Carol Redinbo lived with Kerry Foust. She testified that he left their apartment around 10:00 p. m. on April 12, returned around midnight and left again. He finally returned around 2:00 a. m. on April 13, with five to seven portable television sets which he covered with a blanket. She observed that some of these television sets were Zenith models. These sets were placed in the kitchen. Later that evening the sets were removed by Steve Broccolo and another individual. Broccolo returned later and left one hundred dollars ($100) for Foust. Broccolo testified that Foust had contacted him and asked him to help sell the television sets. Broccolo sold several of the sets to some of his friends and some were recovered. Broccolo also testified that Foust had told him that the television sets came from Pfrommer Brothers store and that he had burglarized the store. Trooper Morrison tracked down one of the television sets which had been sold to Craig Sherry. The serial number on this set matched the number of one of the stolen sets taken from Pfrommer Brothers Television Sales Company.

In addition to the above evidence presented about the Pfrommer burglary, evidence regarding a burglary on April 4, 1980, of Reifer's Budget Store was presented. Reifers was located at 903 Main Street and five Quasar 19 inch portable television sets were stolen from there. Appellant Foust had been observed near the burglarized premises early on the morning of the burglary. Carolyn Redinbo testified that a couple of weeks before April 13, Kerry Foust had brought five Quasar TV's into the apartment at 1100 N. 7th Street and that Ron Tyner took these five Quasar television sets to Indianapolis the next day. She said

Foust may have had a cut on his right hand. Steve Broccolo also testified that prior to his visit to pick up the television sets from the Pfrommer Brothers burglary Kerry Foust had called him asking if Broccolo could sell some television sets. Detective Jerry Loy had investigated a burglary of Reifers involving five Quasar television sets. There were pry marks on the door, broken glass around the door, and blood stains on the glass. Officer Rafael Rameriz testified that on April 12, 1980, Kerry Foust was wearing a bandage on his right hand.

## I.

■ Appellant was charged with the April 13 burglary of the Pfrommer Brothers Television and Appliance store. During the trial, the State produced the evidence set out above of appellant's involvement in another burglary at Reifers. Appellant argues that the trial court erred in admitting such testimony into evidence. Appellant's motion for mistrial based on this testimony was denied. The State contends that the evidence produced was admissible as showing intent and identity.

In *Kimmel v. State*, (1981) Ind., 418 N.E.2d 1152, 1154 this Court stated the following:

> "The general rule in Indiana concerning the admission of evidence of separate, independent crimes or acts committed by an accused is that such evidence is inadmissible. There are exceptions to this rule recognized by our courts. It is well established that evidence of other crimes may be used to prove intent, purpose, motive, identity or a common scheme or plan. *Porter v. State*, (1979) Ind., 397 N.E.2d 269; *Willis v. State*, (1978) 374 N.E.2d 520; *Pierce v. State*, (1977) 267 Ind. 240, 248, 369 N.E.2d 617, 621."

As was set out above, the crime which was the subject of the testimony in issue was a burglary on April 4, 1980, at 903 Main Street in Lafayette, Indiana. A door had been pried open and glass broken. Five 19 inch color Quasar television sets had been taken. Foust had brought five Quasar television sets into the apartment at 1100 N.

7th Street. Steve Broccolo had been contacted by Foust about helping to dispose of television sets. Foust had been seen in the area and was seen later with a bandaged hand.

In the crime which is the basis for this appeal, on April 13, at 707 Main Street in Lafayette, Indiana, a store had been burglarized and the door pried open. Zenith and Magnavox color portable television sets, mostly 19 inch sets, were taken from the store. Foust brought five to seven portable television sets to his apartment at 1100 N. 7th Street. Steve Broccolo was contacted and helped to sell the television sets. These facts are sufficiently similar to support an inference that the appellant was involved in both crimes, and we find the above testimony regarding the crime which occurred at Reifers to be of sufficient probative value to make it competent evidence. There was no error in its admission.

## II.

■ Appellant next argues that the trial court erred in permitting the State to question him during cross examination with regard to the burglary at Reifer's. During direct examination of appellant Foust there was no reference to the prior alleged burglary at Reifer's. Foust was never charged or convicted of the alleged offense of burglary of Reifers in Lafayette, Indiana. Following direct examination of Foust by counsel the State of Indiana began cross-examination with the following question:

"QUESTION: Yes, did you commit the break in of the Reifer's Budget Store?"

"MR. TRUEBLOOD: Objection, Your Honor. May we approach the bench?"

(Bench conference inaudible)

"THE COURT: Objection overruled."

Record at 587.

Counsel for Foust advised him that he had not been charged with the Reifer burglary, informed him of his privilege against self-incrimination, and advised that Foust take the Fifth Amendment. Thereafter, the Prosecutor repeated the question as follows:

 

.·"QUESTION: Yes, did you commit the break in of the Reifer's Budget Store?"

Appellant Foust exercised his right to take the Fifth Amendment. No specific objection was made and the basis for counsel's prior objection is not preserved in the record. Appellant now claims that this question was beyond the scope of direct examination and that his exercise of his Fifth Amendment right prejudiced him. Counsel for appellant failed to state the grounds for his objection at trial, thereby waiving this issue for review. *Hogan v. State*, (1980) Ind. 409 N.E.2d 588; *Beasley v. State*, (1977) 267 Ind. 396, 370 N.E.2d 360.

### III.

■ Appellant finally argues that the court erred in refusing his Final Instruction No. 1. This instruction read:

"You are instructed that the unexplained exclusive possession of recently stolen property is a circumstance that you may consider as to guilt or innocence. However, the mere possession of stolen goods is insufficient to support a conviction of burglary since proof of commission of the offense must be made beyond a reasonable doubt by the State and the Defendant has no burden to account for or explain his possession of the goods."

*Gann v. State*, (1971) 256 Ind. 429, 269 N.E.2d 381.

Appellant argues that this instruction correctly stated the law, that there was evidence to support the giving of it, and that it was not covered by other instructions which were given.

This instruction concerns the unexplained exclusive possession of recently stolen property. In the present case defendant testified at trial that the television sets which he had in his possession on April 12, 1980, had been given to him by Steve Broccolo in exchange for marijuana and that he did not know they were stolen. Therefore, as applied to the facts of the case this instruction is not a correct statement of the law applicable to this evidence. *See Begley v. State*, (1981) Ind., 416 N.E.2d 824 at 827.

In addition, the jury was instructed on the burden of proof and the presumption of innocence. The trial court's preliminary Instruction No. 6 informed the jury that the burden rests upon the State to prove Defendant's guilt beyond a reasonable doubt. Instruction No. 8 explained reasonable doubt. Preliminary Instruction No. 9 informed the jury of the defendant's presumption of innocence, as did Final Instruction No. 1. There is no error in the court's refusing to give tendered instructions the subjects of which are covered by other instructions given by the court. *Ross v. State*, (1980) Ind., 413 N.E.2d 252, 257; *Lynn v. State*, (1979) Ind., 392 N.E.2d 449, 452; *Murphy v. State*, (1977) 267 Ind. 184, 369 N.E.2d 411, 417.

Judgment affirmed.

All Justices concur.