Kerry Dale FOUST, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 983S340.

Supreme Court of Indiana.

Feb. 14, 1986.

Susan K. Carpenter, Public Defender, William L. Touchette, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

Kerry Foust was convicted after a trial by a jury of burglary, Ind.Code § 35–43–2–1 (Burns 1985 Repl.), and theft, Ind.Code § 35–43–4–2 (Burns 1985 Repl.), and was sentenced to terms of imprisonment of 5 years and 2 years. He was found to be a habitual offender and his burglary sentence was enhanced by 30 years. This Court affirmed his conviction in *Foust v. State* (1981), Ind., 428 N.E.2d 776. Foust now appeals the denial of his Petition for Post-Conviction Relief, raising the following issues:

1. Whether he was denied effective assistance of counsel at trial;

2. Whether he was denied effective assistance of counsel on appeal; and,

3. Whether he was denied a fair trial when the State was allowed to go beyond the scope of direct examination and question him about an uncharged crime, causing him to exercise his Fifth Amendment privileges in the presence of the jury.

We affirm.

The burglary with which Foust was charged and convicted was of a Lafayette appliance store, Pfrommer Brothers. On Sunday, April 13, 1980, the door to Pfrommer Brothers was discovered to have been pried open. Seven Zenith and four Magnavox televisions had been stolen.

Foust's girlfriend testified that Foust had returned to their apartment at 2 A.M. that day in possession of five to seven Zenith televisions. Later, Steve Broccolo came to the apartment and took the televisions, which were later recovered and traced back to Foust. The serial numbers matched those of the stolen sets.

Steve Broccolo testified that Foust telephoned him on the Sunday of the burglary and asked him to come to the apartment, where Broccolo first saw the televisions. Together they arranged to sell them. Foust told Broccolo he had stolen the televisions from Pfrommer Brothers.

The State elicited a considerable amount of testimony about another burglary of televisions, the Reifers burglary, which had occurred a few weeks before the Pfrommer Brothers burglary. The Reifers burglar had attempted to pry open the door, but had been forced to break some glass to enter. Because there was blood on the premises and a trail of blood leading out to the street, the police surmised the burglar had been injured when he broke the glass. A detective investigating the burglary saw Foust soon afterwards and noticed his hand was bandaged.

Foust's girlfriend testified that after the Reifers burglary Foust brought some televisions to the apartment and that he had a cut on his hand at the time. Another witness placed Foust near the Reifers store around the time of the burglary.

This Court held in *Foust, supra,* that the testimony about the Reifers burglary was properly admitted under the "common scheme and plan" exception to the rule prohibiting evidence of uncharged crimes, and Foust is not now attempting to relitigate that issue. The issues he now raises stem from the following occurrance at trial.

Foust testified for the defense, and it appears his attorney was careful to avoid "opening the door" to cross-examination about the Reifers burglary. Nevertheless, during cross-examination, the State asked:

Q. Kerry, in this did you deny the Reifers burglary as well?

DEFENSE COUNSEL: Objection, Your Honor. May we approach the bench?

(Bench conference inaudible).

THE COURT: Objection overruled.

The following then took place in the presence of the jury:

DEFENSE COUNSEL: Your Honor, before my client answers that question, I need to advise him of something. I think I'd be entitled to do that.

THE COURT: Proceed.

DEFENSE COUNSEL: Kerry, you understand that you have not yet been charged—or have not been charged at all with the commission of the Reifers burglary?

DEFENDANT: Yes. I know that.

DEFENSE COUNSEL: And as your attorney, I have to advise you that you have the right not to answer questions about those matters since you have a privilege against self-incrimination. Do you understand you have that right?

DEFENDANT: Yes. I do.

DEFENSE COUNSEL: Now the choice as to whether to assert your Fifth Amendment privilege is yours, but as your attorney I'm advising you to—at this time to assert your Fifth Amendment privilege and not to answer any questions directed toward the Reifers matter.

DEFENDANT: Yes, sir.

DEFENSE COUNSEL: You may—you may do what you want to do.

DEFENDANT: Yes.

DEFENSE COUNSEL: That's my advice.

When the question was repeated, Foust replied that he would exercise his right to remain silent.

## I. Ineffective Trial Counsel

The trial court's overruling of the inaudible objection formed one of the issues in Foust's direct appeal. Foust's attorney had raised the issue after trial in his Motion to Correct Error, arguing that the State's question about the Reifers burglary

was outside the scope of direct examination and that Foust was denied a fair trial when the State was allowed to repeat the question and he was forced to "take the Fifth" in the jury's presence.

In *Foust, supra,* this Court declined to address the merits of the claim on the basis that it was waived because of the absence in the record of a specific objection, which, apparently, had been inaudible to the transcriber. Foust now claims his trial counsel was ineffective because the objection did not appear in the record.

Appellant's claim of ineffective assistance of trial counsel is without merit. His trial attorney testified during post-conviction proceedings that the objection at the bench to the State's question was that it was outside the scope of direct. He stated it was customary in his county for side-bar conferences to be recorded, and he believed his had become part of the record. Indeed, Foust concedes that his attorney made an appropriate specific objection to the State's question, but that it was not clearly received by the recording equipment. He has not shown his attorney's performance at trial was deficient.

## II. Ineffective Appellate Counsel

 We are also unconvinced by Foust's argument that he was denied his constitutional right to counsel by appellate counsel's failure to supplement the record. Appellate counsel considered the effect of the inaudible portion of the record. He concluded that although trial counsel's timely objection had not appeared in the trial record because it had been inaudible to the court reporter, it was adequately preserved for appellate review by virtue of a more specific recitation in the Motion to Correct Error and in appellate counsel's brief. This court disagreed and declared the issue waived.

This does not mean, however, that Foust was denied his 6th Amendment right to effective counsel. A successful claim of that sort must include not simply a showing of attorney error, but also a showing that the alleged error prejudiced appellant's cause. *Strickland v. Washington*

(1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. As our resolution below of Issue III reveals, this Court's decision to treat the issue of improper cross-examination as waived because counsel had not supplemented the record did not affect the disposition of Foust's appeal in such a way as to require reversal now.

## III. Improper Cross-Examination

A defendant may not be cross-examined about an uncharged crime. The effect of such cross-examination may be devastating to the defense. *Bryant v. State* (1973), 261 Ind. 72, 301 N.E.2d 179.

Here, however, the jury had already heard substantial testimony about the Reifers burglary and Foust was convincingly tied to that crime. Moreover, the evidence that Foust was guilty of the charged crime, the Pfrommer Brothers burglary, was considerable. In addition to the link between the charged crime and the Reifers burglary, the State's case against Foust included proof that he possessed the stolen televisions and that he told Steve Broccolo he stole them from Pfrommer Brothers.

For that reason, we do not believe the question about the Reifers burglary and Foust's subsequent exercise of the Fifth Amendment could have contributed to the guilty verdict in any significant way. Any error was harmless beyond a reasonable doubt. *Chapman v. California* (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; *Williams v. State* (1985), Ind., 477 N.E.2d 96.

The judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER and PIVARNIK, JJ., concur.

DICKSON, J., not participating.