ATTORNEY FOR APPELLANTS

Leanna Weissmann
Lawrenceburg, Indiana

ATTORNEY FOR APPELLEE

Greg S. Morin
Montgomery, Elsner & Pardieck, LLP
Seymour, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Otter Creek Trading Company,
Inc., and Daniel Pohle,

*Appellants-Defendants*,

v.

PCM Enviro PTY, LTD,

*Appellee-Plaintiff*.

June 7, 2016

Court of Appeals Case No.
40A01-1509-MI-1432

Appeal from the Jennings Superior
Court

The Honorable Matthew D. Bailey,
Special Judge

Cause No. 40D01-1410-MI-49

**Bradford, Judge.**

# Case Summary

Appellant-Defendant Otter Creek Trading Company is operated by Appellant-Defendant Daniel Pohle (collectively, "Defendants") and manufactures and sells lead smelters. Appellee-Plaintiff PCM Enviro PTY, LTD ("PCM"), is an Australian company owned and operated by Craig Mitchell and his brother Paul that recycles lead shot collected from shooting clubs. In 2014, Craig, in his capacity as operator of PCM, arranged to purchase a smelter from Otter Creek and paid for it in full. Defendants, however, did not ship the smelter or

another part (purchased separately and called a Broekema belt) that Defendants had offered to ship along with the smelter and which the defendant Pohle had retrieved from a shipping company in Edinburgh, Indiana.

[2] PCM sued Defendants for breach of contract and for conversion of the Broekema belt. Pohle, *pro se*, filed a letter with the trial court, alleging that Defendants had no signed contract with PCM and that he had never driven to Minnesota to collect the Broekema belt. After the trial court advised Defendants to secure legal representation, they did for a time but filed no further response to PCM's complaint. Eventually, the trial court entered default judgment against Defendants and held a hearing on damages. After the hearing, the trial court ordered a total of approximately $147,000.00 in damages, which included the price of the smelter, lost profits, the value of the Broekema belt, and punitive damages for conversion. Defendants appeal, contending that the trial court erred in entering default judgment, in denying their motions to correct error and for relief from judgment, and in calculating damages. Finding no error, we affirm.

# Facts and Procedural History

[3] Otter Creek is an Indiana corporation operated by Pohle which manufactures and sells lead smelters to customers outside the United States. PCM is an Australian company owned and operated by Craig and his brother Paul that recycles lead shot collected from shooting clubs. In July of 2014, Craig, in his capacity as operator of PCM, arranged to purchase a smelter from Otter Creek

and paid for it in full by July 31, 2014. Otter Creek, however, did not ship the smelter. At some point before deciding not to ship the smelter, Pohle told PCM that there would be room in the smelter packaging and invited PCM to ship other items to Otter Creek so that they could be shipped with the smelter. PCM desired to ship a part called a Broekema belt (purchased from a company in Minnesota) along with the smelter, and, to that end, Pohle retrieved PCM's Broekema belt from the freight company in Edinburgh, Indiana. At one point, Pohle refused to release the Broekema belt to a friend of Craig's who had driven from Wisconsin.

[4] On October 17, 2014, PCM filed its complaint against Defendants, alleging that they had breached the contract for the purchase of the smelter and that they had converted the Broekema belt:

COMPLAINT

Plaintiff, [PCM] complains of the Defendants … and alleges and says:

I. PARTIES

1.  [PCM] is now, and at all times mentioned in this complaint was, a corporation duly organized and existing under the laws of Australia, with their principal place of business located in Melbourne, Victoria, Australia.

2.  [Pohle] is currently a resident of the County of Jennings, Indiana, and is president of [Otter Creek].

3.  [Otter Creek] is now, and at all times mentioned in this complaint was, a corporation duly organized and existing under the laws of State of Indiana, with their principal place of business located in Jennings County, Indiana, and

is engaged in and is transacting business as a company in Jennings County, Indiana.

## II. COUNT I

## BREACH OF CONTRACT

4. [Otter Creek], by its president, [Pohle], offered to manufacture and provide a three (3) ton gas fired lead smelter to PCM.

5. [PCM] accepted Defendant's offer on or about July 5, 2014, to have Defendant manufacture a three (3) ton gas fired lead smelter.

6. Plaintiff was to pay Defendant a total of $15,000.00 per the terms of the contract with half the amount due initially and the remaining half due upon completion of the smelter.

7. Plaintiff complied with the terms of the contract and made both payments representing $15,000.00 in total to Otter Creek via wire transfer.

8. On August 7, 2014, [Otter Creek] sent a letter signed by Pohle, as president, to PCM stating the three (3) ton gas fired lead smelter was completed, tested and that they were waiting on F.O.B. shipping instructions from PCM.

9. The August 7, 2014 letter also stated the $15,000.00 owed by PCM had been paid.

10. [Defendants] have refused to release or ship the smelter since this time even after shipping instructions were supplied and repeated demands by PCM.

11. Pohle falsely claims that PCM and [Craig] intend to steal his intellectual property by purchasing the smelter and copying it.

12. [Defendants] have refused to return the $15,000.00 they received to perform this contract to PCM.

13. [Defendants] have breached the contract with PCM by their failure to perform their obligations under the

contract, specifically, releasing and delivering the smelter to PCM.

14. PCM has been materially damaged as a result of [Defendants'] intentional breach of contract.

### III. COUNT II

### CONVERSION

15. The allegations of rhetorical paragraphs four through fourteen are incorporated herein by reference.

16. PCM had contracted with a third party, Lead Us Reclaim, LLC, of Augusta, Wisconsin, to purchase a Broekema USA belt.

17. [Defendants] had agreed to ship the belt with the above-mentioned smelter to PCM.

18. On August 5, 2014, Pohle drove to Broekema USA and told them that he was picking up a belt to package with the lead smelter that was to be shipped to PCM.

19. The Broekema belt was released to Pohle and he signed a Conway Freight delivery receipt for the belt.

20. PCM had arranged for shipping for the lead smelter and belt on three separate occasions but Pohle refused to release the equipment and complete his performance of the contract.

21. The belt in Pohle's possession has never belonged to him and he has refused to return or release the belt after multiple demands by PCM and [Craig].

22. Pohle has intentionally converted the belt he was to ship with the smelter to PCM by keeping the belt for his own use and knowing he never ha[d] permission from PCM to retain the belt.

23. Plaintiff has suffered significant loss and damage due to the conversion of Plaintiff's Broekema belt and money by [Defendants].

24.     Defendants through conversion and theft have deprived PCM of the entire value of the belt and equipment along with all profits past and future.

WHEREFORE, Plaintiff, PCM, demands judgment against the Defendants, in an amount adequate to fully and fairly compensate him for his damages, prejudgment interest, punitive and treble damages, attorney fees, the cost of this action, and for all other appropriate relief.

Appellant's App. pp. 23-25.

On November 10, 2014, Defendants filed a letter with the trial court, which stated, in part,

a)      At no time has Otter Creek Trading Co., Inc. nor Daniel L. Pohle ever entered into any signed agreement with any Corporation, Company, Resident or Citizen of the Country of Australia.

b)      I, Daniel L. Pohle, did not travel to Minnesota where Broekema USA is located in reference to any belt.

Appellant's App. p. 26.

On November 12, 2014, Defendants filed a discovery request with the trial court requesting PCM's articles of incorporation and Craig's international travel records, proof of residence, and address. On November 18, 2014, the trial court urged Defendants to seek the assistance of counsel. On November 26, 2014, Defendants filed a letter thanking the trial court and informing it that they would be retaining counsel and attempting to have the matter transferred to federal court. On December 18, 2014, counsel for Defendants filed an appearance and moved for a forty-five day extension of time within which to answer PCM's complaint, which motion the trial court granted. On December

29, 2014, counsel for Defendants withdrew his appearance. Defendants filed no further response to PCM's complaint within the forty-five-day extension period.

[7] On February 5, 2015, PCM moved for default judgment on the basis that Defendants had not filed an answer to its complaint. That day, the trial court entered default judgment in favor of PCM and ordered a hearing for the purpose of setting damages. On May 22, 2015, the trial court held a hearing on the issue of damages. On June 17, 2015, the trial court issued its judgment for damages, finding that PCM had suffered damages of $15,000 for money retained, $127,256.50 for lost profits, $1281.30 for money spent on the converted Broekema belt, and $3000.00 in punitive damages, totaling $146,537.80. That day, the trial court also denied Defendants' motion to dismiss PCM's complaint. On July 17, 2015, Defendants filed a motion to correct error and for relief from judgment, which the trial court denied.

[8] Defendants argue on appeal that (1) the trial court erred in entering default judgment against them because they adequately answered PCM's complaint, (2) the trial court abused its discretion in denying their motion to correct error and for relief from judgment, and (3) the trial court abused its discretion in determining PCM's damages. PCM responds that (1) the trial court properly entered default judgment in its favor because Defendants filed multiple letters with the trial court but never admitted or denied any of PCM's allegations, (2) the trial court did not abuse its discretion in denying Defendants' motion to

correct error and for relief from judgment, and (3) the trial court properly awarded damages for lost profits to PCM.

# Discussion and Decision

## I. Whether the Trial Court Abused its Discretion in Entering Default Judgment in Favor of PCM

[9] Indiana Rule of Trial Procedure 8(B) provides, in part, that "[a] responsive pleading shall state in short and plain terms the pleader's defenses to each claim asserted and shall admit or controvert the averments set forth in the preceding pleading." Trial Rule 8(D) provides, in part, that "[a]verments in a pleading to which a responsive pleading is required, except those pertaining to amount of damages, are admitted when not denied in the responsive pleading." "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise comply with these rules and that fact is made to appear by affidavit or otherwise, the party may be defaulted by the court." Trial R. 55(A).

[10] "A judgment by default which has been entered may be set aside by the court for the grounds and in accordance with the provisions of Rule 60(B)." Trial R. 55(C).

> The trial court's resolution of these questions, on both entering and setting aside a default judgment, is a matter of discretion, and we will reverse a ruling on these questions only for an abuse of discretion. *Taco Bell Corp. v. United Farm Bureau Mut. Ins. Co.* (1991), Ind. App., 567 N.E.2d 163, 165, *trans. denied*; [*Green v. Karol*, 166 Ind. App. 467, 473, 344 N.E.2d 106, 110.] That is, we

will reverse only "if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, of the reasonable, probable, and actual deductions to be drawn therefrom." *Myers v. Myers* (1990), Ind., 560 N.E.2d 39, 42.

*State, Dep't of Nat. Res. v. Van Keppel*, 583 N.E.2d 161, 163 (Ind. Ct. App. 1991), *trans. denied*.

# A. Count I

In Count I, PCM alleges that Defendants entered into a contract with PCM to provide it a lead smelter in exchange for $15,000.00 and accepted payment, but never delivered the smelter or returned payment. Defendants' entire response to these allegations was: "At no time has Otter Creek Trading Co., Inc. nor Daniel L. Pohle ever entered into any signed agreement with any Corporation, Company, Resident or Citizen of the Country of Australia." Appellant's App. p. 26. Because this response neither confirms nor denies any of PCM's specific allegations, they are deemed admitted pursuant to Trial Rule 8(D). Moreover, the response does not in any way directly respond to PCM's contract claim, as PCM did not allege that it had a signed contract with Defendants. Simply put, even if we assume that Defendants have not ever entered into a signed agreement with PCM or any other Australian company, that would not help Defendants in this case because it does not represent a valid defense to PCM's contract claim. Although, in general, a valid contract for the sale of goods for more than $500.00 must be in writing and signed by the party against whom enforcement is sought, a contract that does not meet these requirements is enforceable "with respect to goods for which payment has been made and

accepted or which have been received and accepted[.]" Ind. Code §§ 26-1-2-201(a), -201(c). The trial court did not abuse its discretion in entering default judgment in favor of PCM on Count I.

[12] We are cognizant that Indiana has adopted the principles of notice pleading: "All pleadings shall be so construed as to do substantial justice, lead to disposition on the merits, and avoid litigation of procedural points." Trial R. 8(f). That said, the defects in Defendants' answer to PCM's contract claim were not merely of form; the content of the answer simply did not address any of PCM's actual allegations. Our research has uncovered no Indiana case where a similarly non-responsive answer was deemed adequate under Trial Rule 8(b), and, while recent cases directly on point cannot be found, our conclusion is consistent with binding Indiana authority.

[13] In the 1895 case of *Moore v. Morris*, 142 Ind. 354, 41 N.E. 796 (Ind. 1895), the appellees sued the appellants for fraud in the procurement of deeds from one of the appellees to certain lands in Hamilton County when that appellee was allegedly of unsound mind. *Id*. at 354, 41 N.E. at 796. Appellants' response was based chiefly on the allegation that appellants were residents of Marion County and could not be sued in Hamilton County on a merely personal action. *Id*. The Indiana Supreme Court found this response to be inadequate, as it did not foreclose the possibility that appellants were Hamilton County residents when the action was begun. *Id*. Put another way, the response in *Moore* did not directly respond to the allegations in the complaint and therefore did not

necessarily provide a defense to the complaint, even if the averment were assumed to be true.

[14] In *Wilson v. Evansville & Cleveland Railroad Co.*, 9 Ind. 510 (1857), a suit upon a stock subscription, the complaint alleged that a Willard Carpenter had made the stock subscription on behalf of the defendant, who later ratified it. *Id*. at 510. The defendant answered, denying that he had made any stock subscription. *Id*. The Indiana Supreme Court concluded that the answer was inadequate because it was non-responsive:

> In this case, however, it is plain that the answer does not meet the allegations in the complaint. The latter avers that Willard Carpenter subscribed, and the defendant afterwards ratified. The former asserts that the defendant did not subscribe. It is true, the legal effect of the ratification, if a valid one, would be to make the defendant liable as a subscriber; but that liability, strictly speaking, would arise from the ratification, not the making of a subscription. The answer should have directly met the allegations in the complaint. It impliedly admits them. It is a kind of a negative pregnant.

*Id*. at 511. We see no way to meaningfully distinguish the instant case from the binding precedent of *Moore* and *Wilson*. In failing to directly meet the allegations in Count I, Defendants have impliedly admitted them.

## B.  Count II

[15] In Count II, PCM alleges that Defendants took possession of a Broekema belt that it had purchased, retained possession without PCM's permission, and have refused to return the Broekema belt. Defendant Pohle's response was "I,

Daniel L. Pohle, did not travel to Minnesota where Broekema USA is located in reference to any belt." Appellant's App. p. 26. Again, this response neither confirms nor denies any of PCM's allegations, which are therefore deemed admitted. At most, Pohle denies that he traveled *to Minnesota* to collect the Broekema belt, something that PCM did not specifically allege. In any event, Defendants' denial is hardly material, as the place where Pohle took possession of the Broekema belt is not an element of conversion. Defendants do not deny that they took possession of the Broekema belt or that they still have it. As with PCM's first claim, because Defendants' response did not directly meet PCM's allegations, Defendants have impliedly admitted them. The trial court did not abuse its discretion in entering default judgment in favor of PCM.

## II. Whether the Trial Court Abused its Discretion in Denying Defendants' Motions to Correct Error and Motion for Relief From Judgment

[16] "We review a denial of a request for new trial presented by a Trial Rule 59 motion to correct error or a Rule 60(B) motion for relief from judgment for abuse of discretion." *Speedway SuperAmerica, LLC v. Holmes*, 885 N.E.2d 1265, 1270 (Ind. 2008).

> A trial court has abused its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable inferences therefrom. The trial court's decision comes to us cloaked in a presumption of correctness, and the appellant has the burden of proving that the trial court abused its discretion. In making our determination, we may neither reweigh the evidence nor judge the credibility of

witnesses. Instead, we look at the record to determine if: "(a) the trial court abused its judicial discretion; (b) a flagrant injustice has been done to the appellant; or (c) a very strong case for relief from the trial court's [order] … has been made by the appellant."

*Volunteers of Am. v. Premier Auto Acceptance Corp.*, 755 N.E.2d 656, 658 (Ind. Ct. App. 2001) (citations omitted).

## A. Motion to Correct Error

[17] Most of Defendants' specific arguments in this section boil down to claims that they are entitled to relief based on the following, which Defendants seem to characterize as claims of newly-discovered evidence: PCM did not legally exist when it arranged to purchase the smelter from Defendants, PCM did not follow Indiana law when filing its complaint against Defendants, and Defendants did not ship the smelter to PCM due to Craig's failure to adequately verify his identity.

> "Motions predicated upon newly discovered material evidence are viewed with disfavor." *Kimmel v. State* (1981), 275 Ind. 575, 418 N.E.2d 1152, 1157. Whether to grant a new trial on the grounds of newly discovered evidence is within the discretion of the trial court, and, on appeal from a denial of the motion, we reverse only if the trial court could not reasonably have reached a conclusion that, upon retrial, a different result was not probable. *Id*.

*Laudig v. Marion Cty. Bd. of Voters Registration*, 585 N.E.2d 700, 712 (Ind. Ct. App. 1992), *trans. denied*.

[18] In order to obtain relief on the basis of allegedly newly-discovered evidence, Defendants would have to establish that: (1) the evidence has been discovered

since the default; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely impeaching; (5) it is not privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) the evidence is worthy of credit; (8) it can be produced on a retrial of the case; and (9) it will probably produce a different result. *See Wiles v. State*, 437 N.E.2d 35, 39 (Ind. 1982).

[19] At the very least, Defendants do not claim, much less establish, that evidence related to the three specific claims they make in this section was discovered following the entry of default judgment against them on February 5, 2015. Defendants do not claim that they were unaware of the facts underlying their alleged concerns about PCM's legal capacity to sue them in an Indiana court before default judgment was entered. As for alleged concerns about the sufficiency of Craig's identification, these surfaced soon after PCM made its final payment on the smelter according to Pohle's own testimony at the damages hearing. (Tr. 95-97).

[20] Moreover, Defendants have shown no likelihood of a different result were they to obtain a reversal of the trial court's default judgment. Defendants' first argument is based on the fact that PCM Enviro PTY LTD was not registered as a proprietary Australian company until July 17, 2014, which is after PCM agreed to purchase the smelter from Defendants. (Plaintiff's Ex. 1). Although Defendants suggest that this somehow undermines the validity of their contract with PCM, we conclude that they have failed to establish that it does. PCM Enviro was registered as a business name on January 3, 2013, as an entity being held by the Treelawney Development Trust, which entity Craig testified he and

Paul "turned … into a corporation" on July 17, 2014. Tr. p. 10. Contrary to Defendants' claims, the evidence seems to establish, at most, that the PCM Enviro that contracted with Defendants was a predecessor in interest to the PCM Enviro that sued them.

[21] Defendants also contend that PCM failed to follow Indiana law in pursuing its lawsuit. Defendants rely on Indiana Code section 23-1-49-2(a), which provides that "[a] foreign corporation transacting business in Indiana without a certificate of authority may not maintain a proceeding in any court in Indiana until it obtains a certificate of authority." Subsection (c) of the same statute, however, provides that

> [a] court may stay a proceeding commenced by a foreign corporation, its successor, or assignee until it determines whether the foreign corporation or its successor requires a certificate of authority. If it so determines, the court may further stay the proceeding until the foreign corporation or its successor obtains the certificate.

[22] While PCM did not originally have a certificate of authority, it obtained one on May 21, 2015. Plaintiff's Ex. 1. In any event, as Indiana Code section 23-1-49-2(c) makes clear, PCM's failure to obtain a certificate of authority had no effect on the validity of its lawsuit nor did it have any effect on its outcome. The only remedy Defendant would ever have been entitled to was a stay while PCM obtained a certificate of authority, which is certainly *not* a different result.

[23] As for Defendants claim that they did not ship the smelter or Broekema belt because Craig failed to adequately identify himself, we cannot say that

Defendants have established that this argument would likely produce a different result either. There is evidence that Craig and Paul went to some lengths to comply with Pohle's request to have Craig's passport "certified" by the United States Embassy in Australia and/or the Australian Government. When the requested information was sent to Pohle, he still did not ship the smelter to PCM. In other words, there is evidence in the record that Craig took reasonable measures to identify himself to no avail. Moreover, there is also evidence that Pohle's request for identification was a mere pretext, his true motivation for refusing to ship the smelter being fear of counterfeiting. Under the circumstances, we cannot say that raising the identification issue would have been likely to produce a different result. The trial court did not abuse its discretion in denying Defendants' motion to correct error.

## B. Motion for Relief From Judgment

[24] Trial Rule 60(B) provides, in part, that "[o]n motion and upon such terms as are just the court may relieve a party or his legal representative from a judgment, including a judgment by default, for the following reasons: (1) mistake, surprise, or excusable neglect[.]" "A motion for relief from a judgment under T.R. 60(B) is addressed to the equitable discretion of the trial court." *Minnick v. Minnick*, 663 N.E.2d 1226, 1228 (Ind. Ct. App. 1996).

> We review the grant or denial of … Trial Rule 60(B) motions for relief from judgment under an abuse of discretion standard. [*Holmes,* 885 N.E.2d at 1270]; *Outback Steakhouse of Florida v. Markley*, 856 N.E.2d 65, 72 (Ind. 2006). On appeal, we will not find an abuse of discretion unless the trial court's decision is

clearly against the logic and effect of the facts and circumstances before it or is contrary to law. *Miller v. Moore*, 696 N.E.2d 888, 889 (Ind. Ct. App. 1998).

*Cleveland v. Clarian Health Partners, Inc.*, 976 N.E.2d 748, 755 (Ind. Ct. App. 2012), *trans. denied*.

> The burden is on the movant to demonstrate that relief under T.R. 60(B) is both necessary and just. *Fairrow v. Fairrow,* 559 N.E.2d 597, 599 (Ind. 1990). Relief under T.R. 60(B) also requires that the movant make a *prima facie* showing of a meritorious defense for [reason (1)]. *Smith v. Johnson,* 711 N.E.2d 1259, 1265 (Ind. 1999). A meritorious defense refers to "evidence that, if credited, demonstrates that a different result would be reached if the case were retried on the merits and that it is unjust to allow the default to stand." *Id.*

*In re Rueth Dev. Co.*, 976 N.E.2d 42, 51 (Ind. Ct. App. 2012), *trans. denied*.

[25] Much of what we said with regard to Defendants' argument that the trial court abused its discretion in denying its motion to correct error is relevant here. Specifically, our conclusions about the three distinct defenses raised in that argument are present here; namely, that Defendants have failed to establish that any of them, if raised on retrial, would likely lead to a different result.

[26] Defendants, however, also argue that the overall equities of the case favor them to the extent that reversal is warranted. We disagree with this assessment of the record. Aside from the potential defenses mentioned above, which we have already determined would be unlikely to produce a different result, Defendants also suggest that they were misled about the case, implying that they were

unaware default judgment had been entered against them on February 5, 2015, until the hearing on damages on May 22, 2015.

[27]     While Defendants may have been mistaken regarding the status of the case, we cannot conclude that they were wrongfully misled. The chronological case summary ("CCS") contains several entries indicating both that default judgment had been entered; the May 22, 2015, hearing was to determine damages only; and Defendants were notified of all of the above. The CCS indicates that default judgment was served on Pohle on February 11, 2015, and the default judgment order scheduled a hearing on damages only. Defendants do not claim that they were not served with the default judgment. Moreover, although Defendants claim that their counsel did not know until just before the damages hearing that he would be defending against a claim of over $145,000.00, there does not seem to be any indication of such ignorance or confusion in the record.

[28]     Other circumstances weigh against Defendants. First and foremost, once Defendants determined that they would not ship the smelter or Broekema belt to PCM, they retained both PCM's money and the belt. Even assuming that Defendants had a legitimate reason to cancel the sale, they do not explain why they did not simply refund PCM's payment. Pohle also seems to be somewhat less than forthright about his reason for refusing to ship the smelter to PCM, blaming the whole incident on Craig's alleged failure to establish his identity. As we have mentioned, Pohle actually seemed motivated by his fear—of which there is no evidence—that Craig intended to appropriate his intellectual

property.  Defendants have failed to establish that relief from the default judgment entered against them is necessary and just.

# III. Damages

[29] Defendants contend that the trial court abused its discretion in computing damages, arguing that the amount awarded for lost profits was based on speculation and in awarding punitive damages related to their conversion of the Broekema belt.

## A.  Lost Profits

It is axiomatic that a party injured by a breach of contract may recover the benefit of its bargain but is limited in its recovery to the loss actually suffered.  *Fowler v. Campbell*, 612 N.E.2d 596, 603 (Ind. Ct. App. 1993).  A party injured by a breach of contract may not be placed in a better position than it would have enjoyed if the breach had not occurred.  *Id*.  A damage award must be based upon some fairly defined standard, such as cost of repair, market value, established experience, rental value, loss of use, loss of profits, or direct inference from known circumstances.  *Id*.  The damages claimed also must be the natural, foreseeable, and proximate consequence of the breach.  *Id*.  The foreseeability of damages is based upon facts known at the time of entry into the contract, not facts existing or known at the time of the breach.  *Berkel & Co. Contractors, Inc. v. Palm & Associates, Inc.*, 814 N.E.2d 649, 658-59 (Ind. Ct. App. 2004).

A party injured by a breach of contract may recover consequential damages from the breaching party.  *Rockford Mut. Ins. Co. v. Pirtle*, 911 N.E.2d 60, 67 (Ind. Ct. App. 2009), *trans. denied*.  "Such consequential damages may include lost profits, providing the evidence is sufficient to allow the trier of fact to estimate the amount with a reasonable degree of certainty and

exactness." *Clark's Pork Farms v. Sand Livestock Systems, Inc.*, 563 N.E.2d 1292, 1298 (Ind. Ct. App. 1990). Consequential damages may be awarded if the non-breaching party's loss flows naturally and probably from the breach and was contemplated by the parties when the contract was made. *Rockford*, 911 N.E.2d at 67. The party seeking such damages bears the burden of proving by a preponderance of the evidence that the breach was the cause in fact of its loss. *Id*. "This generally limits consequential damages to reasonably foreseeable economic losses." *Id*.

*L.H. Controls, Inc. v. Custom Conveyor, Inc.*, 974 N.E.2d 1031, 1043 (Ind. Ct. App. 2012).

> When the specific issue on review relates to a question of inadequate or excessive damages, we will not reverse a damage award if it is within the scope of the evidence before the trial court, and we neither reweigh the evidence nor judge the credibility of the witnesses. *Randles v. Ind. Patient's Comp. Fund*, 860 N.E.2d 1212, 1230 (Ind. Ct. App. 2007), *trans. denied*.

*Ponziano Const. Servs. Inc. v. Quadri Enterprises*, *LLC*, 980 N.E.2d 867, 873 (Ind. Ct. App. 2012).

[30]     Craig testified that he communicated the importance of receiving the smelter from Pohle, specifically, that PCM had just "done a deal" with a company named Champion Ammunitions to provide lead ingots. Tr. p. 40. The contract with Champion provided, *inter alia*, that PCM was to be paid a price tied to the price of lead listed on the London Metal Exchange ("LME") at the time. Craig also testified that Defendants' failure to deliver the smelter rendered them unable to fulfill their contract with Champion. Finally, Craig introduced evidence that, based on the LME price of lead at relevant times, the amounts of lead that PCM anticipated delivering but did not, and PCM's costs, PCM's lost

profits were $127,256.50. Defendants argue that Craig did not mitigate PCM's damages by failing to identify himself sufficiently and PCM's valuation of the lead it would have sold to Champion was artificially high. As we have mentioned, Craig made reasonable efforts to comply with Defendants' request to identify himself. Moreover, Defendants' argument regarding valuation amounts to an invitation to reweigh the evidence heard and evaluated by the trial court, which we will not do. Defendants have failed to establish that the trial court abused its discretion in awarding damages for lost profits.

## B. Punitive Damages

[31]    Defendants claim that insufficient evidence supports the trial court's award of $3000.00 in punitive damages to PCM for Defendants' conversion of the Broekema belt.

> The standard for determining if punitive damages were properly awarded is whether, considering only the probative evidence and the reasonable inferences supporting the judgment, a reasonable trier of fact could find by clear and convincing evidence that the defendant acted with malice, fraud, gross negligence or oppressiveness which was not the result of a mistake of fact or law, honest error of judgment, overzealousness, mere negligence, or other human failing. Punitive damages may also be awarded upon a showing of willful and wanton misconduct.
>
> Punitive damages are those designed to punish the wrongdoer and to discourage him and others from similar conduct in the future. Because they are awarded in addition to damages that compensate for the specific injury, the injured party has already been awarded all that he is entitled to as a matter of law. Therefore, the sole issue is whether the defendant's conduct was so obdurate that he should be punished for the benefit of the

general public. Punitive damages are awarded upon a showing of intentional conduct, which focuses on the defendant's state of mind.

*INS Investigations Bureau, Inc. v. Lee*, 784 N.E.2d 566, 582-83 (Ind. Ct. App. 2003) (citations omitted), *trans. denied*.

[32] Even if one takes Pohle's professions of concern about Craig's identity at face value, this has nothing to do with the Broekema belt. Defendants took possession of the Broekema belt and apparently kept it instead of allowing PCM to arrange alternate shipping to Australia. Indeed, Pohle refused to release the belt to Bill Moss, a friend of Craig's that drove from Wisconsin on Craig's behalf to retrieve it. Defendants had no legitimate interest in the Broekema belt which would justify refusing to release it to Moss. Given Pohle's belief that Craig was attempting to "clone" his smelter, tr. p. 97, the trial court could reasonably infer that he harbored some malice toward Craig and PCM, which motived his conversion of the Broekema belt. The record contains sufficient evidence to sustain the trial court's award of $3000.00 in punitive damages.

# Conclusion

[33] We conclude that the trial court did not abuse its discretion in entering default judgment in favor of PCM or in denying Defendants' motions to correct error and for relief from judgment. We further conclude that the trial court did not abuse its discretion in determining PCM's compensatory damages from lost profit or punitive damages for Defendants' conversion of the Broekema belt.

The judgment of the trial court is affirmed.

Bailey, J., and Altice, J., concur.