## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 25 2020, 9:35 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Roger L. Pardieck
Karen M. Davis
The Pardieck Law Firm
Seymour, Indiana

Michael J. Stapleton
Brian A. Karle
Ball Eggleston, PC
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Maggie L. Smith
Darren A. Craig
Frost Brown Todd LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Elizabeth Gresser, Individually, John Gresser and Janice Gresser Individually and as Parents and Natural Guardians of Rebekah Gresser,

*Appellants-Plaintiffs,*

v.

Reliable Exterminators, Inc.,

*Appellee-Defendant*

September 25, 2020

Court of Appeals Case No. 79A05-1711-CT-2621

Appeal from the Tippecanoe Superior Court

The Honorable Robert M. Hall, Special Judge

Trial Court Cause No. 79D01-0403-CT-25

**May, Judge.**

[1] Elizabeth Gresser, her parents John and Janice, individually and as parents and natural guardians of Rebekah Gresser, (collectively, "the Gressers") appeal the trial court's denial of their motion to correct error following a jury verdict in favor of Reliable Exterminators, Inc. ("Reliable"). The Gressers present two issues, which we consolidate and restate as whether the trial court abused its discretion in denying the Gressers' motion to correct error, which asked the court to reconsider its denial of the Gressers' request for a jury instruction delineating statutes related to pesticide application. Finding no abuse of discretion, we affirm.

## Facts and Procedural History

[2] On January 31, 2000, Robert Hanstra, the owner of Reliable Exterminators, Inc. ("Reliable"), inspected a vacant house (hereinafter "the House") at the request of a realty firm. On February 11, 2000, a Reliable termiticide technician, David Neal, treated the House using a Dursban TC solution (hereinafter "Dursban"). While Dursban was approved by the Environmental Protection Agency ("EPA") for residential use at the time, it contains a neurotoxin, chlorpyrifos, and has a distinct odor to warn of chlorpyrifos in the air. Dursban came with extensive instructions for proper usage because it should not be allowed to seep into a house or be blown into living spaces through air ducts. Neal, however, did not follow the instructions on the Dursban label that required applicators to have an assistant watch for leaks during application, seal basement wall cracks before use, turn the furnace off

prior to application, examine ductwork and fix leaks, as necessary, and lay down a plastic vapor barrier after spraying in crawl spaces.

[3]  The Gressers bought the House in May 2001. They noticed an odor in the House prior to purchase, but they were assured it was only because the House had been closed up for a period of time. Elizabeth and Rebekah, who both were under five years old at the time, exhibited "unremitting flu-like symptoms, excessive secretions, ear infections, vomiting, diarrhea, fatigue, rashes, and other problems" while the family lived in the house. (Br. of Appellant at 21 (citing Tr. Vol. 9 at 131-36, Vol. 3 at 141, 143, 149, 152-62, 165-68, & Vol. 11 at 199-202).) The odor in the House never subsided, and the Gressers vacated the House in June 2002. The Gressers contacted, amongst others, the EPA and the Indiana State Chemist's Office ("ISC") to determine whether the House contained dangerous substances. Tests revealed varying levels of chlorpyrifos throughout the House.

[4]  In March 2004, the Gressers filed a complaint against Reliable for negligent application of Dursban to the House and alleged the Reliable caused injuries to their daughters. Reliable filed a motion for summary judgment, which the trial court denied. On appeal following the summary judgment ruling, the Court of Appeals held, in relevant part, that the trial court correctly denied Reliable's motion to exclude testimony from the Gressers' expert witness; that the Federal Insecticide Fungicide and Rodenticide Act ("FIFRA"), 7 U.S.C. sec. 136j(a)(2)(G), did not preempt the Gressers' claims against Reliable; that Reliable owed the Gressers a common-law duty to warn them of the Dursban

application; and that the Gressers' access to punitive damages was a question of fact for trial.  *Gresser v. Dow Chemical Co., Inc.*, 989 N.E.2d 339 (Ind. Ct. App. 2013), *reh'g denied*, *trans. denied*.

[5] On April 7, 2015, the Gressers filed an amended complaint that alleged Reliable was negligent both in its application of Dursban and in its failure to warn the Gressers of the "nature of the product."  (Appellants' App. Vol. II at 71.)  The trial court scheduled a jury trial for May 15, 2017.  On April 11, 2017, the Gressers filed proposed final jury instructions that included an instruction to inform the jury of the legal impact of violating FIFRA:

> When the events in this case happened, a federal statute, 7 U.S.C sec. 136j(a)2)(G) [sic] of the Federal Insecticide, Fungicide and Rodenticide Act provided as follows:
>
> Sec. 136j. Unlawful acts.
>
> (a) In general.
>
> > (2) It shall be unlawful for any person –
> >
> > > (G) to use any registered pesticide in a manner inconsistent with its labeling.
>
> If you find from the greater weight of the evidence that person or company violated U.S.C. sec. 136j(a)(2)(G) on the occasion in question and that the violation was not excused, then you must decide that person or company was negligent.

> Compliance with the statute, however, does not prevent a finding of negligence where a reasonable person or company would take additional precautions.

(*Id*. at 194.) Reliable did not object to that proposed instruction before trial.

The trial court conducted a jury trial from May 15, 2017, to June 15, 2017. Elizabeth and Rebekah, who were nineteen and sixteen, respectively, at the time, testified at trial. On June 14, 2017, as trial ended, the Gressers requested a final jury instruction to explain the legal impact of violating Indiana's pesticide use statute, Indiana Code section 15-3-3.6-14:

> When the events in this case happened, Indiana Code Section 15-3-3.6-14 provided in part as follows:
>
> It is a violation for a pest control company to do the following:
>
> 1) Recommend, use or supervise the use of any registered pesticide in a manner inconsistent with its labeling approved by the United States Environmental Protection Agency or Indiana State registration for that pesticide; or
>
> 2) Operate in a careless or negligent manner; or
>
> 3) Use a restricted pesticide without having a licensed applicator or a licensed certified operator in direct supervision.
>
> If you decide from the greater weight of the evidence that a company violated Indiana Code Section 15-3-3.6-14, then you must decide that the person and/or company was negligent.

> Compliance with the statute, however, does not prevent a finding
> of negligence where a reasonable company would take additional
> precautions.

(*Id*. at 79.) Reliable objected to the Gressers' proposed instructions. After hearing argument, the trial court determined it would not give jury instructions based on the statutory language, but it would permit the Gressers to argue that Reliable's violation of the statutory requirements demonstrated Reliable had breached its common-law duty to the Gressers. The Gressers so argued in closing arguments. The jury found in favor of Reliable, and the trial court entered judgment thereon.

[7] The Gressers filed a motion to correct error and request for a new trial that asserted the trial court erred by not giving a jury instruction based on either the state or federal statute. The parties appeared for a hearing on the Gressers' motion, after which the court denied the motion in an order that found: "The court has examined the instructions as tendered and considered the totality of the circumstances and evidence presented and finds that the pending Motion should be denied." (*Id*. at 65.)

# Discussion and Decision

[8] Because a number of arguments herein are based on the parties' divergent understandings of "negligence *per se*," we begin our analysis with clarification of that term under Indiana law. Generally speaking, "the unexcused violation of a statute or ordinance constitutes negligence *per se* if the provision (1) 'protects the

class of persons in which the plaintiff is included' and (2) 'protects against the type of harm [that] has occurred as a result of the violation.'" *Stachowski v. Estate of Radman*, 95 N.E.3d 542, 544 (Ind. Ct. App. 2018) (quoting *City of Fort Wayne v. Parrish*, 32 N.E.3d 275, 277 (Ind. Ct. App. 2015), *trans. denied*).

Be that as it may, to succeed in a negligence action, a plaintiff still must demonstrate three elements: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; and (3) the breach proximately caused the plaintiff's injuries, *id*., and "the doctrine of negligence *per se* doesn't concern the duty element of a negligence action." *Id*. (emphasis added).

> "In a negligence *per se* action, the statute [or ordinance] supplies a defendant's standard of care—the second element in a tort claim. The negligence *per se* defendant already owes a duty to use reasonable care without reliance on the statute [or ordinance]." *F.D. v. Ind. Dep't of Child Servs*., 1 N.E.3d 131, 143 n.12 (Ind. 2013) (Rush, J., dissenting) (citing 1 Dan B. Dobbs et al., The Law of Torts § 148 (2d ed. 2011) (explaining that negligence-*per-se* defendant "must be under a duty to use reasonable care; if he is not, violation of the statute cannot prove breach of duty") and Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 38 cmt. d (2012) (explaining that negligence-*per-se* defendant is subject to duty of reasonable care "even without reliance on the statute")). In short, a plaintiff cannot rely on the doctrine of negligence *per se* to satisfy the duty element of a negligence claim.

*Id.* at 544-45 (emphases added).

Rather, to satisfy the duty element of a negligence claim, a plaintiff must demonstrate that a defendant had a duty toward the plaintiff that arose either at

common law or by statute. *Id*. at 543. If a defendant had an existing common-law duty of reasonable care, and if a plaintiff argues the defendant's violation of a statute or ordinance proves the breach of that existing common-law duty, then the plaintiff has been said to be raising a negligence-*per-se* claim. *Id*. If, instead, the defendant had no common law duty and the plaintiff asserts a statute or ordinance created duty enforceable by plaintiff against defendant, then the plaintiff is said to be raising a private-right-of-action claim.[1] *Id*.

[11] As then-Chief Judge Vaidik noted in 2018, these two forms of tort claim are often confused, *id*., and we have little doubt why this confusion arises – a single term has evolved to have two distinct meanings within the same area of the law. "Negligence *per se*" means both: (1) "the unexcused violation of a statute or ordinance[,]" *Stachowski*, 95 N.E.3d at 544, which is a doctrine for proving breach; and (2) a type of tort claim in which (a) the defendant had a common-law duty of reasonable care toward the plaintiff, and (b) the violation of a

---

[1] "When a plaintiff claims that the violation of a statute or ordinance gives rise to civil liability even in the absence of a common-law duty, the issue should be framed as whether the statute or ordinance confers a 'private right of action'[.]" *Stachowski*, 95 N.E.3d at 545. For a plaintiff to have a private right of action to sue a defendant for alleged violation of a statute, the plaintiff must demonstrate the legislature that passed the statute "intended to establish not just a standard of conduct but a duty enforceable by tort law." *Id*. To determine whether the legislature intended to create a duty enforceable by private tort action, we look first to see if the statute creates "an express right of action." *Id*. Absent an express right provided in the statute, we consider: "(1) whether the statute or ordinance was designed to protect particular individuals or the public in general and (2) whether it includes an independent enforcement mechanism." *Id*.

> A private party may not usually enforce rights under a statute designed to protect the public in general and which contains an enforcement provision. When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode. Whether a statute creates a private right of action is a question of law for the court.

*Howard Regional Health System v. Gordon*, 952 N.E.2d 182, 187 (Ind. 2011) (internal citations and quotation omitted).

statute or ordinance is asserted to demonstrate the defendant's failure to use the reasonable care required by the common-law duty. *Id*. at 544-45. Having these two distinct meanings of "negligence *per se*" would not be a problem were it not for the fact that "the unexcused violation of a statute or ordinance" would also demonstrate breach of a defendant's statutory duty in a private-right-of-action claim. Because negligence *per se* can demonstrate breach of both a common-law duty and a statutory duty, a tort action based on one of those origins of duty ought not be called a negligence-*per-se* claim.

[12] To eliminate confusion throughout the remainder of this opinion, we will use "negligence *per se*" only when referring to the doctrine of demonstrating breach of duty by evidence a defendant violated a statute. We will refer to the tort claims themselves as being either a "Statutory-Duty Claim" or a "Common-Law-Duty Claim." With this clarification in mind, we turn to the disagreements between the parties herein.

## Jury Instruction

[13] Instructing the jury is a matter assigned to the sound discretion of the trial court. *Burdick v. Romano*, 148 N.E.3d 335, 340 (Ind. Ct. App. 2020). We review the court's decision only for abuse of discretion. *Humphrey v. Tuck*, 132 N.E.3d 512, 515 (Ind. Ct. App. 2019). In this case, we also consider that the trial court was presented with these arguments again following trial, by way of the Gressers' motion to correct error and for a new trial, which the trial court denied. We review a denial of a motion for new trial presented by a Trial Rule

59 motion to correct error for an abuse of discretion. *Otter Creek Trading Co., Inc. v. PCM Enviro PTY, LTD*, 60 N.E.3d 217, 226 (Ind. Ct. App. 2016), *reh'g denied*, *trans. denied*.

> A trial court has abused its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before the court or of the reasonable inferences therefrom. The trial court's decision comes to us cloaked in a presumption of correctness, and the appellant has the burden of proving that the trial court abused its discretion. In making our determination, we may neither reweigh the evidence nor judge the credibility of witnesses. Instead, we look at the record to determine if: "(a) the trial court abused its judicial discretion; (b) a flagrant injustice has been done to the appellant; or (c) a very strong case for relief from the trial court's order has been made by the appellant.

*Id*. (quoting *Volunteers of Am. v. Premier Auto Acceptance Corp.*, 755 N.E.2d 656, 658 (Ind. Ct. App. 2001)).

[14] When we review a trial court's refusal of a tendered instruction, we consider: 1) whether the tendered instruction is a correct statement of the law; 2) whether there is evidence in the record to support the instruction; and 3) whether the substance of the instruction is covered by other instructions given by the court. *Id*. Jury instructions are intended to inform the jury of the law applicable to the facts without misleading the jury and to enable the jury to comprehend the case clearly and arrive at a just, fair and correct verdict. *Centennial Mortgage, Inc. v. Blumenfeld,* 745 N.E.2d 268, 278 (Ind. Ct. App. 2001). Accordingly, a trial court properly rejects an instruction that would "mislead or confuse the jury." *Burdick*, 148 N.E.3d at 340.

[15]   The Gressers argue on appeal that the trial court erred by not giving at least one of their two proposed jury instructions, which were based on a federal statute and an Indiana statute. At the end of trial, however, as counsel argued about proposed final jury instructions, counsel for the Gressers repeatedly indicated she was arguing for an instruction that stated the Indiana statute "instead" of the federal law. (Tr. Vol. 18 at 134.) (*See also id*. at 174 (Gressers' counsel says, "Plaintiffs have asked instead for our proposed final instruction No. 2 that was filed this morning, which is just the Indiana code instead of using the federal code.").) Because the Gressers only argued for the Indiana Code instruction, we will review only the trial court's refusal to give that instruction. *See Swan Lake Holdings, LLC v. Hiles*, 888 N.E.2d 265, 272-73 (Ind. Ct. App. 2008) (holding jury instruction error waived because objection raised on appeal was different from objection raised at trial).

[16]   The Gressers tendered the following proposed jury instruction based on state law:

> When the events in this case happened, Indiana Code Section 15-3-3.6-14 provided in part as follows:
>
> It is a violation for a pest control company to do the following:
>
> 1) Recommend, use or supervise the use of any registered pesticide in a manner inconsistent with its labeling approved by the United States Environmental Protection Agency or Indiana State registration for that pesticide; or
>
> 2) Operate in a careless or negligent manner; or

3) Use a restricted pesticide without having a licensed applicator or a licensed certified operator in direct supervision.

If you decide from the greater weight of the evidence that a company violated Indiana Code Section 15-3-3.6-14, then you must decide that the person and/or company was negligent.

Compliance with the statute, however, does not prevent a finding of negligence where a reasonable company would take additional precautions.

(Appellant's App. Vol. II at 79.)[2]

### *(1) Whether the Instruction Correctly States the Law*

[17] When the Gressers requested Indiana's statutory language be presented to the jury as a final instruction, Reliable objected because the Gressers "did not plead a negligent *per se* count [and] to put a negligence per se instruction in without pleading a statutory count, it's not – it's not consistent with the law."[3] (Tr. at

---

[2] The Gressers note their proposed instruction was based on Indiana Model Civil Jury Instruction 327, which states:

> When the events in this case happened, [Indiana Code § _____ ][*ordinance number and name*] provided [in part] as follows: [*here set out applicable portions of statute or ordinance*].

> If you decide from the greater weight of the evidence that a person violated [Indiana Code § _____ ][*ordinance number and name*], and that the violation was not excused, then you must decide that person was negligent.

327 Violation of Statutory Duty as Fault or Negligence, Ind. Model Civ. Jury Inst. 327.

[3] Despite the fact that the Gressers had not pled a "statutory count" Reliable did not object when the Gressers' presented evidence about the statute's requirements and about Reliable's acts in violation of the statute  because, as trial counsel explained, "I don't move to strike people's evidence because they didn't plead it." (Tr. at 177.)  However, the failure to object to evidence that does not conform to the pleadings implies consent to try the issues as raised by that evidence, even if the issues were not raised in the pleadings. *See* Ind. Trial Rule 15(B) ("When issue not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.").  *And see United*

179.)  As we explained above in the preliminary discussion of negligence *per se*, Reliable's argument is incorrect as a matter of law.  Negligence *per se* can be asserted to prove that a defendant violated a common law duty of reasonable care.  *See*, *e.g.*, *Cook v. Whitsell-Sherman*, 796 N.E.2d 271, 275 (Ind. 2003) (court held dog owner had common-law duty of reasonable care to prevent animal from injuring others and Indiana Code section 15-5-12-1 imposed definition of reasonable care when victim of bite was postal carrier).  Thus, the Gressers did not need to assert a Statutory-Duty Claim – and undertake the additional burden of demonstrating the statute provided a private right of action, *see*, *e.g.*, *Brown v. City of Valparaiso*, 67 N.E.3d 652 (Ind. Ct. App. 2016), *trans. denied* – in order to assert Reliable committed negligence *per se* that proved breach of the common law duty.

[18]    Reliable also argues the instruction is incorrect as a matter of law because the instruction does not contain any mention of proximate cause or responsible cause.  In response, the Gressers note the instruction about proximate cause or responsible cause is a separate pattern jury instruction that the trial court was already planning to give as a final instruction.  (See Appellants' App. Vol. 2 at 205 (final instruction 7, which provides three elements of tort claim); and at 210 (final instruction 12, which provides a definition of "responsible cause").)  We

---

*Leaseshares, Inc. v. Citizens Bank & Trust Co.*, 470 N.E.2d 1383, 1390-91 (Ind. Ct. App. 1984) (based on evidence presented without objection, issue tried by consent), and *Homemakers Fin. Serv., Inc. v. Ellsworth*, 177 Ind. App. 640, 642, 380 N.E.2d 1285, 1287 (1978) ("the issue was properly before the court by the failure of Homemakers to object to evidence in relation thereto"), *reh'g denied*.  Accordingly, we evaluate the Gressers' claims as if they pled that defendants breached their common-law duty by committing statutory violations.

agree with the Gressers that the element of responsible cause did not need to be included in its proposed instructions for the proposed instruction to be a correct statement of law.

[19] Next, Reliable argues the trial court properly denied the proposed instruction because the instruction was incomplete and would mislead the jury. Reliable argued the jury could not understand and properly apply the requested statutory language instruction unless it was also given instructions that included the Dursban label, (Appellants' App. Vol. 2 at 117-125), which counsel described as a "long, complicated, convoluted label," (Tr. Vol. 18 at 181), and the Indiana Administrative Code section that explained that "direct supervision" did not mean the supervisor had to be at the treatment location overseeing the application. (*See id*. at 178 ("the code describes what direct supervision is"); *and see id*. at 179 ("if the Court overrules my objection, I'm going to ask that we put in the administrative code, which explains some of the language [in] what they gave today").)

[20] In a related vein, Reliable argued that giving Indiana Code section 15-3-3.6-14 in the format of pattern jury instruction, *see supra* n.3, is not as straight-forward as application of other statutory duties, such as those related to driving. As Reliable asserted at trial, instructing the jury that a chemical must be applied consistently with the label is "not an absolute clear duty. That's not like you can't run a red light. [I]t does not give the jury a clear absolute standard they have to look at." (Tr. Vol. 18 at 183.)

[21] If an instruction accurately reflects a statute, the trial court still does not err by declining to give the instruction if it is not correct as to the particular case. *See Lee v. Hamilton*, 841 N.E.2d 223, 230 (Ind. Ct. App. 2006) (trial court did not err by declining to give instruction even though instruction was an accurate reproduction of the statute). We agree with Reliable that the tendered instruction based on the statute would have required additional clarification instructions and that it may have confused the jury in its proposed form.[4] "The purpose of a jury instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." *Dill v. State*, 741 N.E.2d 1230, 1232 (Ind. 2001). Therefore, we find no abuse of discretion in the trial court's denial of the proposed instruction or in its denial of the motion for a new trial. *See, e.g., Wallace v. Rosen*, 765 N.E.2d 192, 198 (Ind. Ct. App. 2002) (instruction properly rejected where it risked confusing and misleading the jury).

## Conclusion

[22] The trial court did not abuse its discretion in denying the Gressers' motion for a new trial based on their Trial Rule 59 motion to correct error regarding jury

---

[4] Our conclusion that proposed jury instruction would have been likely to confuse rather than clarify the issues means that we need not reach the questions of whether the evidence supported the giving of the instruction and whether the substance of the proposed instruction was covered by the other instructions. *See, e.g., Barnard v. Himes*, 719 N.E.2d 862, 869 (Ind. Ct. App. 1999) (where instruction not supported by evidence, other two elements need not be analyzed), *trans. denied*.

instructions. Although the tendered instruction based on the statute was a correct statement of that statute and the model jury instruction on negligence *per se*, the tendered instruction would have created ambiguities that were not explained by other proffered instructions. As the proposed instruction may have confused or misled the jury, we cannot say the trial court was wrong to reject it. Therefore, we affirm.

[23]  Affirmed.

Tavitas, J., and Baker, Sr. J., concur.